

NUMBER 13-10-00029-CR

# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JULIO MADRIGAL JR.,                                                                Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.

On appeal from the 24th District Court
of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez, and Benavides
Memorandum Opinion by Justice Benavides**

A jury convicted appellant, Julio Madrigal Jr., of aggravated assault with a deadly weapon, and the court sentenced him to sixteen years' confinement in the Texas Department of Criminal Justice—Institutional Division. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2009). By four issues, with several sub-issues, Madrigal contends

that the trial court erred by: (1) infringing upon his Fifth Amendment right to not act as a witness against himself; (2) admitting into evidence a knife allegedly used by Madrigal without proper authentication; (3) failing to submit an instruction on the affirmative defense of "defense of third persons" to the jury; and that (4) the judgment was not supported by sufficient evidence. We affirm.

## I. BACKGROUND

On July 4, 2008, Madrigal was involved in an altercation with Jose Cervantes at Club Palenke in Victoria, Texas. Both parties admitted to having many drinks and being intoxicated. Earlier in the evening, Madrigal noticed that his ex-girlfriend, Melanie Luis, was also at the club with several friends, including Cervantes. A separate altercation occurred in the bathroom of the club between Madrigal and Reynaldo Hernandez, Cervantes's brother, but it was calmed down when security was called to the bathroom, and the two parties "pretty much ignored each other" until the bar was closing at 2:00 a.m. According to Madrigal's testimony, Cervantes's party was leaving the club and Luis stopped at Madrigal's table to discuss an issue concerning their shared child. Madrigal testified that Cervantes instructed Luis that the group would leave her behind if she did not leave right then, to which Madrigal responded, "Hey, I'm talking to her." Madrigal testified that at that time, Cervantes reached across the table and slapped Madrigal in the face causing him to fall backwards. Other testimony indicated that Madrigal in fact approached Luis as she and Cervantes were leaving the club and blocked their exit. Security escorted Madrigal out the back door of the club while Cervantes and the rest of his party left through the front door of the club. Testimony differed as to how Cervantes and Madrigal ultimately became involved in a fight, but it

2

was undisputed that Madrigal took a knife from his pocket and lunged at Cervantes with the knife, and that Cervantes brutally beat Madrigal about the face with his fists until Madrigal "wasn't moving any[]more." Cervantes testified that he left the scene after the fight because:

> I was scared because like—I figured he didn't hurt me and I hurt him. And he came at me, so it really wasn't my fault, me doing anything to him, because he came at me. [I] didn't want to get in trouble with the law[,] so I just decided to leave.

After Cervantes left in his pick-up truck, he noticed that he was bleeding and had been stabbed several times. He began losing consciousness and ultimately passed out behind the wheel. Cervantes was transported by ambulance to Citizens Medical Center in Victoria where he was treated for multiple stab wounds to the left side of his body. Cervantes was not charged with a crime. Madrigal was found guilty of aggravated assault with a deadly weapon, and this appeal followed.

## II. ESTABLISHING SELF-DEFENSE

By his first issue, Madrigal contends that his Fifth Amendment right to not testify was violated because the trial court "forced" him onto the witness stand by (1) excluding Luis's testimony concerning Madrigal's self-defense claim and (2) making improper comments to the jury, thereby making it necessary for Madrigal to testify in order to establish his theory of self-defense. His argument is based primarily on the following exchange:

Q:     [Counsel for Madrigal] Was Mr. Madrigal, did he show any expression, knowing that Mr. Cervantes was coming toward him?

A:     [Luis] Yes.

Q:     What did he do?

3

A:     That's why he brushed past me.

Q:     Okay. And in seeing this coming toward him, was he trying to defend himself?

   [Counsel for the State]:     Your Honor, I object. That calls for speculation on the part of this witness.

   [Counsel for Madrigal]:     Judge, it doesn't, okay. This witness can testify as to what she saw, okay, and the events leading up to it.

   THE COURT:     But what would his motivation be would be something that's solely within his province, so I'll sustain the objection.

Following this exchange, the jury was asked to return to the jury room, and counsel for Madrigal moved for a mistrial based on the judge's comment that "[Madrigal's] motivation [] would be something that's solely within his province," contending that,

> at this point in time[,] I believe that that comment by the [c]ourt is going to lend an inference to the jury that is going to be very, very detrimental to my defense of him and putting forth the self-defense theory because I believe that they're going to take from that comment if he doesn't testify, they can't consider self-defense.

The court denied the motion for mistrial, and offered to instruct the jury concerning its ability to consider self-defense absent the defendant's testimony. After the instruction was approved by the parties, the court brought the jury back into the courtroom and instructed them as follows:

> Ladies and gentlemen, I'm going to give you an instruction. I want you to listen carefully to this instruction and then you will be guided by this instruction for the remainder of the trial.
>
> In response to [the State's] objection, I pointed out that whether or not Mr. Madrigal intended to defend himself was a mental condition that only Mr. Madrigal knew and I want to tell you that Mr. Madrigal has a right not to testify. But you can consider the defense of self-defense under these conditions. If, by other evidence, which means by the witness or other photos or other witnesses, Mr. Madrigal can demonstrate to you that

4

he, Mr. Madrigal, abandoned the encounter, or clearly communicated to Mr. Cervantes his intent to do so and reasonably believed that he could not safely abandon the encounter and that Mr. Cervantes, once he knew that Mr. Madrigal intended to abandon the encounter, nevertheless continued or attempted to continue to use unlawful force against Mr. Madrigal. Don't you love legalease. [sic]

Madrigal additionally contends on appeal that the last sentence of the instruction, "Don't you love legale[]se[?]," "trivialized" and "rendered completely meaningless" the court's instruction.

## A. Admissibility of the Testimony

First, Madrigal contends that the trial court erred by excluding Luis's testimony concerning Madrigal's self-defense claim.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996). Texas Rule of Evidence 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." TEX. R. EVID. 602. Additionally, testimony that is based solely on speculation and conjecture necessarily lacks probative value, and therefore fails to meet the relevancy requirement of the rules of evidence. *Turro v. State*, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref'd) (citing TEX. R. EVID. 401). Lay testimony concerning the thought processes of others, however, is not always considered speculative and should be admitted if the testimony is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of [the] testimony or the determination of a fact in issue." TEX. R. EVID. 701; *see Bigby v. State*, 892 S.W.2d 864, 888 (Tex. Crim. App. 1994). Crucially, rule 701's requirement that the testimony be based on the witness's perception presumes that the witness meets the

5

personal-knowledge requirement of rule 602. *Turro*, 950 S.W.2d at 403 (citing *Bigby*, 892 S.W.2d at 889).

Here, the witness, Luis, was asked a very specific question about Madrigal's mental state—whether he was intending only to defend himself or if he intended to also act as, at least, a co-aggressor. As a witness present at the time of the incident, Luis was clearly permitted to testify as to what she observed. *See* TEX. R. EVID. 602. However, whether she had sufficient knowledge to know Madrigal's internal thought processes—especially while he was intoxicated—was not necessarily within her personal knowledge, and therefore, the decision to admit or exclude the testimony was within the discretion of the trial court. *See Green*, 934 S.W.2d at 102. Madrigal does not point to any portion of the record indicating that Luis had special knowledge of Madrigal's thought processes or that she otherwise had personal knowledge of his intentions. *See* TEX. R. APP. P. 38.1(i) (requiring the appellant to give "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Therefore, we cannot conclude that the trial court abused its discretion in excluding Luis's objected-to testimony.

## B. The Trial Court's Comments

Second, Madrigal contends that the trial court erred by making inappropriate comments in the presence of the jury. Although he cites no authority for this contention, we construe this argument as a contention that the trial court made a comment in violation of article 38.05 of the Texas Code of Criminal Procedure which provides that:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark

6

calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979).   "To constitute reversible error, the trial court's comment to the jury must be such that it is reasonably calculated to benefit the State or to prejudice the rights of the defendant."   *Becknell v. State*, 720 S.W.2d 526, 531 (Tex. Crim. App. 1981).   Here, the trial court simply made a comment that he was sustaining the State's objection because Madrigal's state of mind fell "solely within his province."   Because this statement had no bearing on what Madrigal's actual state of mind was, we conclude that this comment was not calculated to benefit the State or to prejudice the rights of the defendant.   *See id.*   Additionally, even if this statement was originally prejudicial, the trial court dissolved any such prejudice by (1) giving a clear and comprehensive instruction to the jury regarding the required proof for a self-defense claim; (2) instructing the jury that his comment was not a comment on the evidence; and (3) instructing the jury that it was required to apply the statutory law on Madrigal's claim of self-defense.   *See Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996) (noting that appellate courts assume that a jury will follow instructions from the court); *Aschbacher v. State*, 61 S.W.3d 532, 539 (Tex. App.—Austin 2001, pet. ref'd) (citing *Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981)) ("An instruction by the trial judge to the jury to disregard any comments made by him or her is generally sufficient to cure any error arising from his or her statements.").   Here, Madrigal provides no basis for this Court to conclude that the jury did not follow the instruction given to it by the trial court, and therefore, we find no error.   *See Aschbacher*, 61 S.W.3d at 539.

Madrigal additionally contends that the judge's comment to the jury at the end of the his instruction—"Don't you love legale[]se[?]"—rendered the instruction meaningless.

7

We disagree because nothing in this comment instructs the jury to disregard the previous, comprehensive instruction. *See Williams*, 937 S.W.2d at 490. Regardless, because Madrigal made no objection to the comment at the time it was made, no error is preserved for review. *See Becknell*, 720 S.W.2d at 532 (citing *Sharp v. State*, 707 S.W.2d 611, 619 (Tex. Crim. App. 1986)).

## C. Fifth Amendment Violation

Third, Madrigal contends that the combination of the trial court's exclusion of Luis's testimony and its comments to the jury "prevented [Madrigal] from establishing self-defense other than by waiving his Constitutional right to not testify" and that this amounted to a violation of his Fifth Amendment right to not act as a witness against himself. *See* U.S. CONST. amend. V. We disagree.

As we have discussed, neither of these actions by the trial court prejudiced Madrigal or constituted error. Madrigal provides no support for his argument that the trial court should be required to admit otherwise inadmissible evidence in order to preserve a defendant's ability to not testify. The Fifth Amendment right to not testify is a protection that forces the State to prove its case beyond a reasonable doubt without relying on the testimony of the defendant. *See id.*; *cf. Carter v. Ky.,* 450 U.S. 288, 304 (1981) ("Without question, the Fifth Amendment privilege and the presumption of innocence are closely aligned."). This is not to say, however, that the rules of evidence are no longer applicable when a defendant seeks to prove an affirmative defense for which he has the initial burden. *See Zuniga v. State*, 144 S.W.3d 477, 482 (Tex. Crim. App. 2004) (noting that, for an affirmative defense, the defendant carries the initial burden of proof). In other words, when the defendant seeks to prove an affirmative

8

defense, he will often find it necessary to waive his Fifth Amendment privilege in order to establish that defense; the fact that his defense could not be established without his testimony, however, does not mean that his testimony was compelled. *See United States v. Haimowitz*, 706 F.2d 1549, 1557 (11th Cir. 1983) (noting that the defendant's Fifth Amendment rights were not violated because "he was never required to say or produce anything, and [there was] no compulsion to speak, [despite the fact that there was] inherent psychological pressure to respond at trial to unfavorable evidence"); *Lavern v. State*, 48 S.W.3d 356, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (noting that self-defense is rarely raised where the defendant does not testify).

Moreover, Madrigal did present his self-defense claim through the testimony of his other witnesses, and therefore, we find his Fifth Amendment challenge to be wholly unconvincing. *See Smith v. State*, 676 S.W.2d 584, 587 (Tex. Crim. App. 1984) (noting that the defendant need not testify in order to establish the basis for a claim of self-defense, and he will nevertheless be entitled to an instruction on the affirmative defense if it is raised by the evidence). Based on the foregoing, we overrule Madrigal's first issue in its entirety.

### III. THE KNIFE

By his second issue, Madrigal contends that the trial court erred by admitting State's Exhibit #28 ("the knife") into evidence because it was not properly authenticated. Here again, we review the trial court's ruling on the admission of the evidence for an abuse of discretion. *Green*, 934 S.W.2d at 102. Texas Rule of Evidence 901 requires that, as a precedent to admissibility, the proponent must present evidence to sufficiently "support a finding that the matter in question is what its proponent claims"—or in this

9

case, that the knife was in fact the knife found in the parking lot of the club. *See* TEX. R. EVID. 901(a). Detective John Swenson of the Victoria Police Department testified about the chain of custody of the knife and how he knew it to be the knife he found in the parking lot:

Q:      [Counsel for the State]   Did you actually collect the knife that you found in Club Palenke that matched Melanie Luis's description?

A:      [Detective Swenson]   Yes, ma'am.

        . . . .

Q:      Do you keep custody of whatever item you find until you place it into evidence at the Victoria Police Department?

A:      Yes, ma'am, it never leaves my custody.

        . . . .

Q:      How did you handle the knife when—after you found it, in order to maintain its integrity and for it to possibly be tested for prints?

A:      The first —the first thing we do is when we find—find the evidence would be to take a photograph of it at the location.   Of course we take our measurements and, as you saw, the photographs.

        . . . .

Q:      State's exhibit Number 3, the top photograph of the knife, is that how you found the knife, with the blade open?

A:      Yes, ma'am.

Q:      Do you recognize State's Exhibit Number 28?

A:      Yes, ma'am.

Q:      How do you recognize it?

A:      My handwriting, my signature.

Q:      What types of information do you put on a piece of evidence to make sure that you'll be able to identify it later and associate it with

10

a particular offense report and case?

A:    The first thing would be the actual case number that's assigned to the incident.   Also, date and time when the property was located.  Also, the employee's name and their employee number, which mine is John Swenson 6390.   The[n] give a description of what it is.   In this case it's a black folding knife with "Jeep" written on the side of it.

The officer testified as to how he remembered finding the knife and testified to the characteristics of the knife that ensured him he was looking at the same knife that he discovered in the parking lot of the club, including the distinct "Jeep" logo written on the side of the knife.   Based on his testimony, we conclude that the knife was properly authenticated, and the trial court did not err by admitting it into evidence.   See TEX. R. EVID. 901(b) (allowing evidence to be authenticated, among other ways, by testimony of a witness with knowledge or by the identification of distinctive characteristics of the evidence, including "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances"); *see also Angleton v. State*, 971 S.W.2d 65, 68 (Tex. Crim. App. 1998).

Under his second issue, Madrigal additionally contends that the knife was inadmissible "[b]ecause there was no physical evidence to link Julio to the knife . . . ." As the State points out, this appears to be an argument that the evidence was not relevant under Texas Rule of Evidence 403.   See TEX. R. EVID. 403.   However, insofar as Madrigal is making such a relevancy argument, his issue is not preserved for our review because he did not object to the admission of the knife on this basis, nor has he adequately briefed such an argument.   See TEX. R. APP. P. 33.1 (requiring that, to preserve error for appeal, an appellant must timely object, state the grounds for the objection with sufficient specificity and obtain an adverse ruling);   *id.* R. 38.1(i)

11

(requiring the appellant to give "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").   Accordingly, we overrule Madrigal's second issue.

## IV. DEFENSE OF THIRD PERSONS

By his third issue, Madrigal contends that the trial court erred by not instructing the jury on his requested affirmative defense of defense of third persons.   "An accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense."   *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).   The accused's testimony alone may be sufficient to raise a defensive theory requiring a charge.   *Id.*   The failure to instruct the jury on a defensive issue when it is raised by the evidence is subject to harmless error analysis.   *Id.* at 494.   Consequently, we consider (1) whether the evidence, viewed in the light most favorable to Madrigal, is sufficient to raise the issue of defense of third persons; and (2) whether failure to include the requested jury instruction constituted harmful error.   *See id.*; *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

A person is justified in using force to protect another so long as the accused reasonably believes that the third person would be justified in using force to protect herself.   *Hughes v. State*, 719 S.W.2d 560, 564 (Tex. Crim. App. 1986).   Additionally, the actor must reasonably believe that his intervention is immediately necessary to protect the third person.   *See id.*; *see also* TEX. PENAL CODE ANN. §§ 9.32(a), 9.33 (West 2003).

To establish that he was entitled to a jury instruction for defense of third persons,

12

Madrigal points to the following excerpt from his testimony:

Q:      [Counsel for Madrigal]   Did you fear at any point in time for Melanie?

A:      [Madrigal]   Yes.

Q:      Okay.   Why?

A:      Because she was right there next to me and in front of me.   They were coming from the back of her.

Q:      When you saw them coming at you at a pretty good pace[,] what did you do?

A:      I move[d] Melanie to the side.

Q:      Did you push her?

A:      Yes.

Q:      Why did you push her?

A:      So she wouldn't be in the way [when Cervantes was] coming towards me.

Q:      Did you also fear for her life?

A:      Yes.

We disagree that this testimony constituted any evidence of Madrigal's reasonable belief that Melanie would have been justified in using force to protect herself.   Under similar facts, the Fort Worth Court of Appeals held similarly, noting in that case that the

> [a]ppellant admitted that the complainant appeared to be unarmed and that he never saw the complainant holding any type of weapon.   Appellant also testified that he stabbed the complainant because the complainant was trying to hurt him.   This evidence supports the trial court's decision to submit the issue of self-defense to the jury but does not support [a]ppellant's claim of defense of third persons.

*Kennedy v. State*, 193 S.W.3d 645, 653 (Tex. App.—Fort Worth 2006, pet ref'd).

Because no evidence indicated that Melanie was in danger of being attacked by

13

Cervantes, Madrigal's testimony that he feared for her safety was insufficient to raise the defense of third persons. *See* TEX. PENAL CODE ANN. § 9.33; *Hughes*, 719 S.W.2d at 564. Therefore, it was not error for the trial court to deny Madrigal's instruction on the affirmative defense. *Hamel*, 916 S.W.2d at 494. Accordingly, we overrule Madrigal's third issue.

## V. SUFFICIENCY OF THE EVIDENCE

By his fourth issue, Madrigal contends that the trial court erred because "the jury's rejection of [Madrigal's] affirmative defense of self-defense was against the great weight and preponderance of the evidence." We construe this issue to be a challenge to the legal sufficiency of the evidence weighing against Madrigal's self-defense affirmative defense.

The Texas Court of Criminal Appeals has held that our only sufficiency review should be under "a rigorous and proper application" of the *Jackson* standard of review, and therefore, we apply only that standard as argued in Madrigal's legal sufficiency arguments. *See Brooks v. State*, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010). Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 902 n.19. "[T]he fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original); *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases, is the exclusive judge of facts proved, and the weight to be

14

given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence."). The State is required to negate, beyond a reasonable doubt, any affirmative defenses raised by the evidence. *See Zuliani v. State*, 7 S.W.3d 589, 594 (Tex. Crim. App. 2003).

Here, Madrigal challenges the sufficiency of the evidence negating his claim of self-defense. The penal code provides that "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." *See* TEX. PENAL CODE ANN. § 9.31(a) (West 2003).

Although we agree with Madrigal that there was evidence that would have allowed a jury to find that he acted in self-defense, the jury was free to disbelieve all of such evidence. *See Wesbrook*, 29 S.W.3d at 111. In fact, there was also evidence to support a finding that he did not act in self-defense. For example, during Cervantes's testimony, he indicated that Madrigal was the aggressor:

Q:     [Counsel for the State]   And what happened next? . . . .

A:     [Cervantes]   . . . I reached over to open my door and Melanie said, "Look out." And by the time I turned my head, he already had hit me a couple times. So I reached over and grabbed him and started swinging back at him.

Based on Cervantes's testimony, and after viewing all of the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found beyond a reasonable doubt that Madrigal was not acting in self-defense. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 902 n.19. Therefore, Madrigal's fourth issue is

15

overruled.

## VI.   CONCLUSION

Having overruled all of Madrigal's issues on appeal, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Publish.
TEX. R. APP. P.47.2(b).

Delivered and filed the
7th day of July, 2011.

16