**Affirmed and Memorandum Opinion filed August 26, 2014.**



In The

## Fourteenth Court of Appeals

### NO. 14-13-00774-CR

### ZACHARIAH HARVEY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1311763**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Zachariah Harvey of murder and assessed his punishment at forty years' confinement and a $10,000 fine; the trial court signed a judgment accordingly. He challenges his conviction on the grounds that: (1) there is insufficient evidence to disprove self-defense; (2) admission of certain autopsy photographs violated his right to confrontation; and (3) exclusion of evidence of the decedent's violent character prevented him from presenting his claim of self-defense in "any meaningful way." We affirm.

## BACKGROUND

On July 13, 2010, appellant and his wife, the decedent Ninotchka Harvey, engaged in a lengthy argument about an electricity bill. They went from room to room inside their house arguing. At one point, appellant went into his bedroom, but the decedent kicked in the bedroom door to continue their argument. During their argument, around 1:00 p.m., the decedent's daughter and young son left the home to go to the mall, leaving appellant and the decedent alone in the house.

Around 2:00 p.m., appellant called 911 and requested that police come to his house in response to "an incident that led to a stabbing." When asked if he had been stabbed, he replied, "No, self-defense." After a few more questions from the 911 operator, appellant acknowledged that the person who had been stabbed was at the scene and might need an ambulance. After that operator transferred the appellant to another operator, appellant said that he had stabbed a woman in self-defense. He also said that the stabbing occurred about fifteen minutes ago. The 911 operator asked whether the woman who was stabbed was awake or breathing; appellant said he could not tell because she was "face down." He was instructed to roll her over and determine whether she was breathing. After complying, he told the operator that she was not breathing. The operator instructed him to start CPR; before the 911 operator could start giving him instructions, appellant stated, "I know how to do CPR." He started performing CPR, but he got no breathing or circulation. He was instructed to continue with chest compressions, which he did until emergency response units arrived at the location.

After emergency responders arrived at the scene, the decedent was pronounced dead at the scene. She had injuries to her face, including bruising on her face and forehead and swelling on her lip, her fingernails appeared to have been bent back, and she had been stabbed twice. Appellant told police officers that

2

he had tried to end the argument with the decedent by locking himself in a bedroom, but she kicked in the door and continued the argument. He said that he went into the kitchen to get away from her and started washing knives. Appellant said that the decedent came up behind him with a knife and he turned and stabbed her. He also speculated that she had "walked into" the knife.

The autopsy performed on the decedent indicated that she had bruises on her face consistent with blunt force trauma and slapping. She also had contusions on her arm consistent with someone having grabbed both her arms.

Appellant was indicted for murder. He pleaded "not guilty." The trial court charged the jury on the law of self-defense, but a jury found him guilty as charged. After a punishment hearing, the jury assessed punishment at forty years' confinement and a $10,000 fine. Appellant timely filed this appeal.

### SUFFICIENCY OF EVIDENCE OF SELF-DEFENSE

In his first issue, appellant asserts that the evidence is insufficient to disprove self-defense. A defendant has the initial burden of producing some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. App. 2003) (citing *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. (Tex. Crim. App. App. 1991) (en banc)). Once evidence is produced, the burden shifts to the State to disprove the defense beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913. This burden of persuasion does not require the State to produce evidence to refute the self-defense claim, but requires only that it prove its case beyond a reasonable doubt. *Id.* Thus, self-defense is not an affirmative defense that the defendant must prove by a preponderance of the evidence, but is instead a defense that the State must overcome in its burden of proving the elements of the offense beyond a reasonable doubt. *Compare* Tex. Penal Code Ann. § 2.03 ("defenses to prosecution"), *with id.* § 2.04 ("affirmative defenses to prosecution").

3

*See also* Tex. Penal Code Ann. § 9.02 ("It is a *defense to prosecution* that the conduct in question is justified under this chapter." (emphasis added)); *id.* § 9.31 (providing requisites for self-defense).

Where, as here, there is a claim of self-defense rejected by the jury, we must consider all the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational fact finder could have found beyond a reasonable doubt (1) the essential elements of the offense and (2) against the appellant on the self-defense issue. *Darkins v. State*, 430 S.W.3d 559, 565 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Saxton*, 804 S.W.2d at 913). Because self-defense is an issue of fact to be determined by the jury, the jury is free to accept or reject the defensive issue. *Medina v.* State, 411 S.W.3d 15, 21 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Saxton*, 804 S.W.2d at 913–14). A jury's guilty verdict is an implicit rejection of the appellant's self-defense claim. *Saxton*, 804 S.W.2d at 914. Here, appellant has not challenged the sufficiency of the evidence to support the essential elements of the charged offense—murder. Thus, we review only whether a rational fact finder could have found beyond a reasonable doubt against appellant on the self-defense issue.

A person is justified in using deadly force against another if he reasonably believes that deadly force is necessary to protect against the other's use or attempted use of unlawful deadly force. *See* Tex. Penal Code Ann. § 9.32(a). As noted above, although the State bears the burden of persuasion to disprove the issue of self-defense, it is not required to affirmatively present evidence that specifically refutes the defendant's self-defense evidence. *Saxton*, 804 S.W.2d at 913–14.

Viewing all of the evidence in the light most favorable to the jury's rejection of self-defense, the jury was entitled to believe that:

1. Appellant stabbed the decedent twice. This evidence is undisputed.

2. The decedent did not threaten appellant with a knife. Appellant reported to investigators that the decedent attacked him with a knife, but the jury was free to disbelieve his statement.[1] The jury heard no other evidence about the decedent holding or otherwise threatening appellant with a knife. According to expert testimony at trial, the presence of the decedent's DNA on the knife blade and handle reflects presence of decedent's blood on the knife.   .

3. Whatever physical alteration had previously occurred had ended at the time the decedent was stabbed. Appellant and the decedent argued and, when appellant retreated to a bedroom, the decedent broke into that room and followed him. However, appellant subsequently went into the kitchen to wash dishes. Appellant stabbed the decedent in the kitchen.

4. Appellant was physically violent with the decedent. The decedent had injuries to her face, hands, and arms, and the injury to her face was consistent with a blunt force trauma. Appellant also had some minor physical injuries, including some small scratches on his face and a cut on his lip. The physical evidence is consistent with appellant's claim of self-defense, neither proving nor refuting it. But "[d]efensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence." *Saxton*, 804 S.W.2d at 914; *see also Madrigal v. State*, 347 S.W.3d 809, 818 (Tex. App.—

---

[1] We note that there was no evidence that the decedent had a knife other than appellant's statements made to first responders.

Corpus Christi 2011, pet. ref'd) ("Although we agree with Madrigal that there was evidence that would have allowed a jury to find he acted in self-defense, the jury was free to disbelieve all of such evidence. In fact, there was also evidence to support a finding that he did not act in self-defense." (citation omitted)); *Lee v. State*, 259 S.W.3d 785, 792 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

5. Once appellant confronted her with a knife, the decedent put her arms in the air to show she was backing away, or was not a threat. The position of the holes in the decedent's shirt indicates that she may have had her arms raised when she was stabbed. There were no stab wounds to the decedent's hands. Although this evidence might be consistent with self-defense, such evidence is undercut by the fact that one of the first responding police officers recalled appellant stated to him that appellant had a knife in his hand, turned around, and the decedent walked into the knife. Similarly, the jury was entitled to infer that the decedent had her arms raised to show appellant, who was holding a knife, that she was not threatening him, yet he stabbed her anyway.

6. Appellant made a self-serving self-defense claim after he stabbed the decedent. The primary evidence supporting appellant's self-defense claim was his statements to the 911 operators that he acted in self-defense and his statement to police that the decedent "came at him" with a knife.

7. On the day the decedent was stabbed, she did not behave so violently that deadly force was necessary in self-defense. Appellant relied on testimony that the decedent had a violent character and had behaved violently in the past. The jury was entitled to disbelieve the statements appellant made that he had acted in self-defense and instead conclude that his actions on the day of the murder were not justified. *See Darkins*, 430 S.W.3d at 566; *Madrigal*, 347 S.W.3d at 819 (citing

6

*Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. App. 2000) (plurality op.)).

In sum, viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant was not acting in self-defense when he stabbed the decedent. We overrule appellant's first issue.

### ADMISSION OF AUTOPSY PHOTOGRAPHS

Appellant next asserts that the trial court committed reversible error by admitting certain autopsy photographs into evidence over his objection. On appeal, he asserts that admission of these photographs violated his right to confrontation, relying on *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2710 (2011).

The record reflects that, after appellant verified that the testifying medical examiner had not written the autopsy report, he made the following objections to the photographs at issue and the autopsy report prepared by an assistant medical examiner when he took the testifying medical examiner on voir dire:

> [Counsel for Appellant]: Then, Judge, *I would renew the objections I raised yesterday about the autopsy photos*. Does the Court understand what I'm saying?
>
> THE COURT: Yes, sir.
>
> [Counsel for Appellant]: Okay. *I would object to State's Exhibit No. 350 under Bullcoming (phonetic) and a violation of the right to confront and cross-examination.*

(emphasis added).

First, State's Exhibit 350 is the autopsy report, the admission of which appellant does not complain about on appeal. The trial court's admission of the autopsy photographs, to which appellant renewed the objections he had raised the day before, is the only ruling about which he complains on appeal. But the record

7

reflects that the only objection raised to these photographs was a Texas Rule of Evidence 403 objection:

> Okay. So, for clarity in the record, it will be Exhibits 463, 464, 466, 467, 468, 469, and 470, as well as 476, 475, 471, 472, 473, and 474. We're objecting that *under 403* that these are substantially more than probative.
>
> ***
>
> We would raise the same objection, *the 403 objection*, to 477 and 478 and 479 and 480, 481, and 482 and 483 and 484.
>
> ***
>
> We make *the same objection*, Judge, to the admission of all of these.

(emphasis added).

To preserve a complaint for appellate review, the record must show that a specific and timely complaint was made to the trial judge and that the trial judge ruled on the complaint. Tex. R. App. P. 33.1; *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009). The complaint raised on appeal must comport with the objection made at trial. *Clark v. State*, 356 S.W.3d 333, 339 (Tex. Crim. App. 2012). If it does not, the complaint is not preserved for appeal. *See Lovill*, 319 S.W.3d at 691–92 ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

Because appellant's confrontation clause complaint does not comport with his Rule 403 objection at trial, he has not preserved this issue for our review. Moreover, appellant offers no authority for extending the Confrontation Clause protections of *Bullcoming* to the autopsy photos in this case.

The United States Supreme Court in *Bullcoming* was presented with the issue of

> whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—*through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported* in the certification. We hold that surrogate testimony of that order does not meet the constitutional requirement.

*Bullcoming*, 131 S. Ct. at 2710 (emphasis added). Thus, the concern in *Bullcoming* was the admission of testimonial scientific evidence in documentary form sponsored by another scientist "who had neither observed nor reviewed" the analysis. *Id.* at 2712 (emphasis added). Over Bullcoming's Confrontation Clause objections, the trial court admitted the analysis.

Here, rather than a laboratory report, as in *Bullcoming*, appellant objects to the introduction of autopsy photographs. He urges that he was entitled to confront the "actual forensic examiner." But we have previously rejected a claim that photos taken during an autopsy are testimonial. *Herrera v. State*, 367 S.W.3d 762, 773 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Appellant makes no effort to distinguish this precedent or otherwise explain how the Confrontation Clause considerations apparent in *Bullcoming* are present here—i.e., a *report* introduced by a scientist who was not present and did not prepare it. *See Bullcoming*, 131 S.Ct. at 2712; *see also Herrera*, 367 S.W.3d at 773 ("An autopsy photograph, however, is not a testimonial statement."). The testifying expert here stated that he was present when the photographs were taken and that they "fairly and accurately depict[ed the decedent]'s body at the time of the autopsy." *See* Tex. R. Evid. 901. Thus, the admission of these photographs is not in conflict with the holding in *Bullcoming*.

9

For the foregoing reasons, we overrule appellant's second issue.

## EXCLUSION OF EVIDENCE

In his final issue, appellant urges that the trial court's erroneous exclusion of the testimony by several proffered defense witnesses regarding the decedent's propensity for aggression and her violent character prevented him from presenting his self-defense claim in "any meaningful way."

> When a defendant in a homicide prosecution raises the issue of self-defense, he may introduce evidence of the deceased's violent character. Specific acts of violence may be introduced to demonstrate the reasonableness of the defendant's fear of danger or to demonstrate that the deceased was the first aggressor. However, such specific acts of violence are admissible only to the extent that they are relevant apart from showing character conformity. This Court has held that specific, violent acts are relevant apart from showing character conformity in the context of proving that the deceased was the first aggressor by demonstrating the deceased's intent, motive, or state of mind. Because the specific act is probative of the deceased's state of mind or intent, the witness must know, but the defendant need not know of the act.

*Torres v. State*, 117 S.W.3d 891, 894–95 (Tex. Crim. App. 2003) (citations omitted).

We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Waters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). We will not reverse the trial court's ruling if it was within the zone of reasonable disagreement. *Tillman*, 354 S.W.3d at 435; *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). Any error in the improper exclusion of evidence is harmless if the record reflects that the evidence was cumulative of other defense evidence before the jury. *See Garcia v. State*, 246 S.W.3d 121, 136 (Tex. App.—San Antonio 2007, pet.

10

ref'd); *Roberts v. State*, 743 S.W.2d 708, 711 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd).

Appellant first complains that the decedent's daughter was not permitted to testify that her mother had previously hurt her, had on occasion whipped her with a broom, and had once actually drawn blood while whipping her. Although the decedent's daughter was not permitted to testify concerning these specific issues, the daughter did testify that, on the day of the murder, she saw appellant go into his bedroom and shut the door to avoid the decedent, but the decedent kicked in the door. She further acknowledged that the decedent "had a temper" and "could get very angry at times." She testified that the decedent would provoke fights and would fight back if provoked. She also testified that once, in response to the appellant striking the decedent, the decedent threatened appellant with a gun.

Appellant proffered the testimony of Maimunah Sabur outside the presence of the jury. Sabur stated she had known appellant and the decedent for over five years. Sabur testified that she had heard the decedent say she knew how to use a knife and a machete. Specifically, Sabur stated she had heard the decedent say, "Maimunah, he [appellant] thinks I don't know how to use this machete, but I cut him and I'll leave him with the kids." She further testified that the decedent had stated, "I know how to use a knife, I can do it very well, especially a machete." Sabur was unsure whether the decedent was "joking or serious" when she made these comments, because at least one time when she made comments about knives or a machete, she was laughing. Sabur further was unable to state when the decedent had made these statements, only that they had all occurred "a while ago." Sabur also testified as follows regarding her opinion about the decedent's character for violence: "My opinion is that you -- have to take [the decedent] as she is at that particular time. The violence was there. It was always right underneath, right

11

underneath the surface. . . . Sometimes she could be a little explosive." Over appellant's objection, the trial court refused to permit this witness to testify before the jury.

Appellant also proffered the testimony of Latonya Howard outside the presence of the jury. In this offer of proof, Howard testified that she had lived with the decedent and appellant shortly before the decedent's death. She testified that (1) she had witnessed the decedent "whoop the kids excessively" using "[b]elts and the stitching boards"; (2) she had seen the decedent kick in doors at least four times and appellant was present for each of these occasions; and (3) the decedent had specifically told Howard that the decedent had "pulled a knife" and a gun on appellant in the past. Howard further opined that the decedent had a "very violent" character. Initially, the State objected to this witness, and the trial court sustained the State's objection. But the next day, the State informed the trial court that it had notified appellant's counsel that it had withdrawn its objection to Latonya Howard's testifying. Nonetheless, appellant did not call this witness to testify. Because appellant did not call this witness to testify after the State withdrew its objection to her testimony, there is no longer a ruling by the trial court about which appellant may complain regarding this witness. *See* Tex. R. App. P. 33.1; *see also* Tex. R. App. P. 44.2 (providing that there must be some degree of harm to show reversible error in criminal cases).

Appellant made an offer of proof of the testimony of Al-Quiyama Faiz, a friend of appellant and the decedent when they lived in Atlanta before they moved to Houston. She described an incident where the decedent had engaged in a car chase; she explained that the decedent had said she was going to "take a machete from underneath her abaya and cut [the driver of the other vehicle] with it." Faiz also testified that she knew the decedent and was familiar with her reputation in the

12

community. Faiz stated that the decedent had a reputation for being "hot-headed" and violent "at times."

Appellant finally complains that he was not permitted to present the testimony of Javier Carrion. But this complaint is belied by the record: Carrion actually testified before the jury. Carrion testified concerning "moments of violence" he had witnessed between appellant and the decedent. For example, he described an incident in which appellant and the decedent were arguing and Carrion witnessed the decedent "point a gun" in appellant's face. He also detailed another occasion where appellant and the decedent were arguing, and the decedent grabbed a knife from the kitchen and began running toward appellant. Carrion explained that he was able to "wrestle" the knife away from the decedent. According to Carrion, he saw another argument between appellant and the decedent where the decedent threw things at appellant. Finally, Carrion opined that the decedent could be "sweet one time," but "the next time, if she got mad, she could throw a switch and just be engulfed in rage." He stated that the decedent's reputation was that "she could get violent or she had been violent in the past."

Based on our review of the record, it is apparent that the defensive issue of the decedent's acts of aggression and character for violence was presented to the jury. First, her daughter described the decedent as having a bad temper and provoking fights; the daughter further testified that the decedent broke down a door to continue a confrontation with appellant on the day of the stabbing, and she described an incident where the decedent had pointed a gun at appellant. Second, Carrion testified that he had seen the decedent point a gun at appellant and that he had intervened when the decedent attempted to confront appellant with a knife. Carrion further testified that the decedent had a reputation for being violent and that she had been violent in the past. Third, appellant had the opportunity to

present further evidence of the decedent's past violent behavior and character for violence through Latonya Howard. Appellant chose not to call Howard as a witness, even though his counsel was timely informed by the State that it had withdrawn its objections to her testimony. Under these specific circumstances, we conclude that any error in the improper exclusion of the testimony of Sabur and Faiz is harmless. The record reflects that this evidence was cumulative of other defense evidence before the jury or evidence that appellant chose not to present to the jury. *Cf. Garcia*, 246 S.W.3d at 136; *Roberts*, 743 S.W.2d at 711.

Under these circumstances, we overrule appellant's third issue.

## CONCLUSION

We have overruled each of appellant's three issues. We affirm the trial court's judgment.


/s/          Sharon McCally
                  Justice

Panel consists of Justices Christopher, Jamison, and McCally.

Do Not Publish — Tex. R. App. P. 47.2(b).