

# NUMBER 13-19-00531-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROBERT JONES,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

### On appeal from the 156th District Court
### of Bee County, Texas.

# MEMORANDUM OPINION

### Before Justices Hinojosa, Perkes, and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellant Robert Jones challenges the trial court's revocation of community supervision by one issue contending that the trial court admitted inadmissible evidence at the revocation hearing. After revoking Jones's community supervision and adjudicating him guilty of possession of marihuana in a correctional facility, a third-degree felony, the

trial court sentenced Jones to three years' incarceration. *See* TEX. PENAL CODE ANN. § 38.11. We affirm.

## I. BACKGROUND

On January 18, 2020, Jones pleaded guilty to possession of marihuana in a correctional facility, and pursuant to a plea agreement with the State, the trial court placed him on deferred adjudication community supervision. On May 9, 2019, the State filed a motion to adjudicate Jones guilty alleging that Jones violated the conditions of community supervision. The State alleged Jones violated conditions of community supervision by, among other things, "intentionally and knowingly caus[ing] bodily injury to Officer Meghan Schromen, a peace officer in the lawful discharge of her official duty, when the said Robert Jones knew and had been informed the said Officer Meghan Schromen was a peace officer by then and there causing to dig handcuffs into wrist and cutting the skin," intentionally and knowingly possessing the controlled substance ecstasy, intentionally and knowingly violating curfew pursuant to community supervision conditions that required him to remain in his residence from 10:00 p.m. to 5:30 a.m. daily, and intentionally and knowingly refusing to allow Sergeant Simpson, "a person who the defendant knew to be a peace officer, to search the property, residence or person of the said Robert Jones, to wit: by pivoting and running from officer, in violation of the Conditions of Community Supervision . . . ." The trial court conducted a hearing on the State's motion.

Robert Simpson, a sergeant and first-line supervisor for the Houston Police Department's Gang Division, testified that at 1:30 am, while he was patrolling, he observed a vehicle that had its high beams turned on, which is a traffic offense. Sergeant

2

Simpson ran the license plate number of the vehicle through a database and discovered that the vehicle had "city warrants." Sergeant Simpson also noticed that the vehicle had an inoperable brake light. Sergeant Simpson conducted a traffic stop to investigate. Sergeant Simpson stated that the driver stopped the vehicle in an apartment complex parking lot, and when Sergeant Simpson approached the vehicle, the driver, who Sergeant Simpson identified as Jones, and its other occupant lifted their hands. Sergeant Simpson said that Jones was "sticking his hands out, I guess, to show he had nothing in his hands." The State asked Sergeant Simpson if he noticed anything unusual when he approached the vehicle. Sergeant Simpson responded that he smelled marihuana, and he found it unusual that Jones raised his hands in a manner Sergeant Simpson believed was an effort to distance himself from something that may have been in the vehicle. Jones objected to this testimony stating that the testimony was speculative, and the trial court overruled the objection.

Sergeant Simpson stated that he requested backup because he intended to search the vehicle on the basis that he smelled marihuana. Sergeant Simpson said that when the backup arrived, he asked the occupants of the vehicle to exit the vehicle, and he placed Jones under arrest by placing him in handcuffs because Jones was unable to produce a driver's license. Sergeant Simpson described what occurred next as follows:

> I brought him out of the vehicle, placed him in handcuffs, brought him to the front of my patrol car and I had him face my patrol car, which is pretty standard if I'm placing someone under arrest during a traffic stop.

> Before I place them in my vehicle, I search them, which is department policy for safety reasons and because we don't want any contraband contaminating our vehicles from somebody or an arrestee has something in their possession that they shouldn't have.

> So I placed him in front of the car. I began to pat him down, which I

3

normally do, and I patted the front of his groin area, which is where I know from experience that a lot of people like to conceal things. He had an extreme reaction to that.

. . . .

I patted him down. He had an extreme reaction to it. So the other officers noticed. They came over to assist because they noticed he was getting very aggravated. I started trying to reason with him and tell him, "Hey, listen, I got to conduct a search of your person before I put you in the car, so calm down. I need you to comply." He kept on refusing and giving me reasons to think of, "I don't like that. I got a gunshot wound here on my abdomen." He showed me, you know, trying to raise his shirt to show me the gunshot wound. Nothing fresh, no fresh injuries or anything that should be substantive of my knowledge.

So I continued with the departmental policy of [searching] his person. As I prepared to pat him down, he began twitching his head and his arms and acting like he was beginning to have a seizure, and so he—without me touching him, he jumped up in the air, slammed his head on the hood, went to the front of the car, rolled on to his back.

So I could see he's still breathing . . . . and he was not convulsing or continuing to have a seizure. So, while he's on his back, I handcuffed his hands behind his back, and I told the other officer to go and check his crotch while he's down there. His crotch is upward and exposed.

At that point, he became alert again and said, "No, man, I can't breathe, I can't breathe. Let me up." He started getting very animated.

According to Sergeant Simpson, once Jones regained his composure and was standing, Sergeant Simpson noticed that Jones was "probably going to try to run or fight or struggle or something." Sergeant Simpson testified that then "Officer Schromen went and put her arm between his handcuffs and his hand to try to put it in there and hold him." Sergeant Simpson explained that Jones "started running, [Officer Schromen had] hold of his arms, and so [Sergeant Simpson] went again and . . . patted the front of his pants." Sergeant Simpson stated that he "felt through the pants" and recognized that it contained a "small baggy with some rocks in there or some pills or something of that nature, some

4

small items in a small plastic baggy."

Sergeant Simpson testified that when he began to pull the baggie, he "saw some white tablets of some kind." Sergeant Simpson stated that at this point, Jones "pivoted away from [him] towards Ward Street and [Jones] began running, and as he ran, [Sergeant Simpson] let go of whatever it was coming out of his pants." Sergeant Simpson said, "Officer Schromen was behind [Jones] with her hand kind of stuck in between his hands and the link of the cuffs, and [Jones] began dragging her as he ran with her trying to brace with her feet to stop him." Sergeant Simpson testified that eventually he caught Jones, and he and Jones "struggled . . . with Officer Schromen trapped between us, and she pivoted again and running back and forth in front of my vehicle where we started." Sergeant Simpson stated that "Officer Schromen had lacerations across her left wrist that was bleeding from being still in handcuffs and having her skin torn when she was trying to either stop him or move her hand." According to Sergeant Simpson, Jones admitted that the pills in his pants were ecstasy. Sergeant Simpson said that when the police eventually searched the vehicle, an ecstasy pill was discovered. Jones was transported to jail, and the other occupant of the vehicle was released.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

We do not reverse a trial court's evidentiary ruling unless a clear abuse of discretion is shown. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id*. (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

Texas Rules of Evidence 602 and 701 apply when a party objects on the grounds

5

that testimony is speculative. *See* TEX. R. EVID. 602, 701; *Solomon v. State*, 49 S.W.3d 356, 364–65 (Tex. Crim. App. 2001); *Turro v. State*, 950 S.W.2d 390,403 (Tex. App.— Fort Worth 1997, pet. ref'd). Rule 602 requires that a witness have personal knowledge of the matter on which he or she is testifying. TEX. R. EVID. 602. Rule 701 concerns lay witness opinion testimony. *See id*. R. 701. Rule 701 requires that a witness rationally base his or her testimony on what he or she perceives. *See id*. R. 602, 701; *Solomon*, 49 S.W.3d at 364–65; *see also Fairow v. State*, 943 S.W.2d 895, 897 (Tex. Crim. App. 1997). An opinion is rationally based on a witness's perception if "a reasonable person could draw [the same opinion] under the circumstances." *Fairow*, 943 S.W.2d at 900.

A witness's testimony must be based on personal knowledge of the issue in question. *Bigby v. State*, 892 S.W.2d 864, 889 (Tex. Crim. App. 1994); *Madrigal v. State*, 347 S.W.3d 809, 814 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd). Pursuant to rule of evidence 602, a witness may testify to a matter only if sufficient evidence supports a finding that the witness has personal knowledge of the matter. TEX. R. EVID. 602. The witness's own testimony may prove personal knowledge. *Id*.

Moreover, pursuant to rule 701, a lay witness may provide an opinion that is based on the witness's perception if it is helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. *Id*. R. 701. "The perception requirement of Rule 701 is consistent with the personal knowledge requirement of Rule 602." *Fairow*, 943 S.W.2d at 898; *see Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). So long as the witness's opinions, beliefs, or inferences are drawn from his or her own experiences or observations, the witness may testify concerning those opinion, beliefs, or inferences. *Osbourn*, 92 S.W.3d at 535.

6

Generally, the erroneous admission of evidence constitutes non-constitutional error, subject to a harm analysis. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Solomon*, 49 S.W.3d at 365. Non-constitutional error requires reversal only if it affects the substantial rights of the accused. *See* Tex. R. App. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the . . . verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We will not overturn a criminal conviction for non-constitutional error if, after examining the record, we have fair assurance that the error did not influence the outcome or had but a slight effect. *Barshaw*, 342 S.W.3d at 93–94.

We review the entire record to ascertain the effect or influence of the wrongfully admitted evidence on the verdict. *Id*. In assessing the likelihood that the decision was improperly influenced, we consider the testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Id*. at 94; *see also Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). The weight of evidence of the defendant's guilt is also relevant in conducting the harm analysis under rule 44.2(b). *Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008); *Motilla*, 78 S.W.3d at 356–58; *Kamen v. State*, 305 S.W.3d 192, 197 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

### III.    DISCUSSION

Jones complains that the trial court admitted speculative testimony when Sergeant Simpson testified during the following exchange:

[The State]:   Okay. So you are testifying that you have gone out to their car. Did you notice anything unusual when you got to their car?

7

A        The smell of marijuana. I did notice that both generally, even on—I can't think of another traffic stop. I can't remember any other traffic stop where I approached people giving me the "Hey, our hands are up, don't shoot," kind of thing, and generally, to me, that kind of compliance indicates knowledge that there may be something in the car that they are trying to distance themselves from.

[Jones]:      Your Honor, I object to the characterization of the witness, calls for— it's speculative.

[Trial Court:]   Noted, overruled. You may continue.

Specifically, Jones argues as follows:

The police officer's testimony amounted to pure speculative conjecture and is precluded under TRE 602 as surpassing the witness' observation or experiencing the underlying facts. To state "that kind of compliance indicates knowledge that there may be something in the car that they are trying to distance themselves from" does not meet the requirement of rule 602 and goes beyond being "based on the witnesses perception" and violates the predicate that the witness must observe or experience the underlying facts. Such statement furthermore on its face is a non sequitur and illogical.

That is the extent of Jones's argument. However, even assuming we agreed with Jones that the trial court improperly admitted the complained-of evidence, Jones does not argue that he was harmed by its admission. *See Barshaw*, 342 S.W.3d at 93–94; *see also Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (concluding that the appellant inadequately briefed his points by not addressing with argument and authorities the question of whether the alleged error of failing to include an instruction in the jury charge was harmless); *Alohaneke v. State*, No. 01-18-00102-CR, 2019 WL 6314899, at *8 (Tex. App.—Houston [1st Dist.] Nov. 26, 2019, pet. ref'd) (mem. op., not designated for publication) (holding that the appellant waived his complaint on appeal that the trial

8

court erred in admitting the State's exhibits into evidence because the appellant failed to argue that he was harmed).

Nonetheless, the trial court was required to determine whether the State's allegations that Jones violated the conditions of community supervision were true by a preponderance of the evidence. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (explaining that preponderance of the evidence means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation"). In order to revoke Jones's community supervision, the trial court only needed to find that Jones violated one condition of community supervision. *See Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012).

The State alleged Jones violated conditions of community supervision by, among other things, "intentionally and knowingly caus[ing] bodily injury to Officer Meghan Schromen, a peace officer in the lawful discharge of her official duty, when [he] knew and had been informed the said Officer Meghan Schromen was a peace officer by then and there causing to dig handcuffs into wrist and cutting the skin," intentionally and knowingly possessing the controlled substance of ecstasy, violating his curfew, and not allowing Sergeant Simpson to search him.

The trial court found all of the above-stated allegations to be "true." Jones does not challenge the evidence supporting the trial court's above-stated findings, and he does not contend that there was insufficient evidence to support the trial court's finding that he committed the above-stated violations of his community supervision. In addition, because Jones does not even allege harm, he has not explained how the complained-of testimony would have affected the trial court's determination that violated the conditions of

community supervision by possessing the ecstasy pill, assaulting an officer, violating curfew, and resisting the search or how the complained-of testimony had a substantial and injurious effect or influence on the trial court's determination that he violated the terms of community supervision as alleged by the State. *King*, 953 S.W.2d at 271.

As previously set out, Sergeant Simpson testified that after he arrested Jones, Jones attempted to prevent him from searching him, and that when he began to conduct a search, he discovered a baggy that contained "some white tablets of some kind" in Jones's pant pocket, which Jones admitted were ecstasy pills. Sergeant Simpson stated that at that point, Jones broke free from him and began to run while Officer Schromen held onto his arms that were handcuffed behind his back. Sergeant Simpson lost control of the baggie when Jones broke free. During this scuffle, Officer Schromen suffered injuries which caused bleeding. Sergeant Simpson also stated that an ecstasy pill was recovered in the car Jones was driving.[1] Moreover, Sergeant Simpson testified that Jones committed the offense of assault on a public servant by dragging Officer Schromen while attempting to flee and remove her grasp of him causing her to be injured.[2] Specifically, Sergeant Simpson stated that Jones ran back and forth while the Officer Schromen's arm was stuck underneath his handcuffed arms which caused her to have "lacerations across her left wrist that was bleeding from being still in handcuffs and having her skin torn when

---

[1] "[A] person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 2, [which includes ecstasy-MDMA] unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice." TEX. HEALTH & SAFETY CODE ANN. § 481.116. Jones denied possession of the ecstasy; thus, he did not claim that he had a valid prescription.

[2] A person commits the offense of assault of a public servant if that person intentionally, knowingly, or recklessly causes bodily injury to another "person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant." TEX. PENAL CODE ANN. § 22.01.

she was trying to either stop him or move her hand." In addition, Sergeant Simpson explained how Jones failed to allow him to search him when he was arrested. And the evidence proved that Jones violated the curfew by being in the vehicle at 1:30 a.m. The complained-of testimony was not necessary to prove that Jones violated any of those conditions of community supervision as alleged and the trial court did not have to depend on the complained-of testimony to determine that issue. In addition, the State did not rely on the complained-of evidence to prove that Jones violated the conditions of his community supervision.

Thus, even assuming it was erroneous for the trial court to admit the complained-of testimony, it did not influence the outcome or had but a slight effect. *See Barshaw*, 342 S.W.3d at 93–94. Accordingly, after reviewing the entire record and the evidence supporting the trial court's findings, we conclude that the complained-of testimony did not have a substantial or injurious effect or influence on the trial court's decision that Jones violated the conditions of community supervision or to revoke Jones's community supervision. *See King*, 953 S.W.2d at 271. We overrule Jones's sole issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
20th day of August, 2020.

11