John Allen CURTIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–00657–CR.

Court of Appeals of Texas,
Dallas.

July 8, 1988.

John Allen Curtis, Dallas, pro se.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before HOWELL, LAGARDE and KINKEADE, JJ.

KINKEADE, Justice.

John Allen Curtis appeals his jury conviction of murder and jury punishment of ten years probation and $10,000 fine. In three points of error Curtis claims: 1) the trial court erred in failing to charge the jury on defense of third persons; 2) the trial court erred in admitting the testimony of the police officers regarding his in-custody statements; and 3) ineffective assistance of counsel. We disagree and affirm the judgment.

Curtis and his client, Alan Galichia were drinking alcohol and talking one evening in Curtis's office with decedent, William Perrin, another attorney who shared offices with Curtis. At trial Curtis claimed that Perrin began waving a pistol menacingly at Curtis and Galichia, and threatening to kill them both. Galichia testified that Curtis, while waving a pistol himself, shot decedent. Both versions agree that Curtis knowingly and intentionally shot Perrin, killing him. Curtis claims he acted in self-defense. The decedent was later found slumped in a side chair in Curtis's office with an empty gun tucked in his waistband. Curtis and Galichia ran from the building after the shooting and Curtis called the police.

After Officers Garcia and Ball arrived, they each questioned Curtis and later Galichia as to what had just occurred. Curtis gave conflicting stories, first stating that Perrin had shot at Curtis and was alive and still in the building. Galichia was then questioned by police and he said that both Curtis and Perrin had displayed handguns and that Curtis had shot Perrin. Curtis, after reflection, then stated that he (Curtis) *may* have had a gun and may have shot Perrin one time. Finally, Curtis stated that he may have shot Perrin twice. Curtis was then arrested and subsequently charged with the murder of the decedent.

In his first point of error, Curtis claims the trial court erred in failing to charge the jury on defense of third persons. Curtis filed a timely objection to the trial court's failure to charge on the issue aforementioned. Texas Penal Code section 9.33 provides:

A person is justified in using force or deadly force against another to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 of this code in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

It is well established that if facts adduced at trial raise an issue and a charge on such issue is properly requested, then a charge on the issue must be given. *Gutierrez v. State*, 666 S.W.2d 248, 249 (Tex. App.—Dallas 1984, pet. ref'd).

Officer Ortega testified that he interviewed Curtis shortly after the shooting at the police station. Although Curtis told the officer three different versions of how the shooting occurred, Curtis consistently stated he believed that "he and Galichia were about to be killed" by the decedent. We hold this testimony sufficiently raises the issue of defense of third persons; and therefore, it was error not to give the requested charge.

In *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) the Court set forth the manner in which a jury charge error is to be reviewed on appeal. The appellate court must undertake a two-step process of review. First, the court must determine if error exists in the charge. Second, the court must determine whether sufficient harm was caused by the error to require reversal of the conviction. When the error is preserved at trial, as in this case, the error must have been "calculated to injure the rights of [the] defendant." *Almanza*, 686 S.W.2d at 171. Specifically, the defendant must have suffered "some actual, rather than theoretical, harm." *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim.App.1986). In determining whether the error was calculated to injure the rights of the accused, the court is required to review the relevant portions of the entire record to determine if any actual harm resulted. *Arline*, 721 S.W.2d at 352.

The trial court *granted* Curtis's requested instruction on self-defense, and based upon the facts in this case we do not find that Curtis suffered any actual harm. Curtis couched his defense in terms of defending both himself and Galichia jointly, not Galichia alone. In this case the negative finding by the jury on the question of precluded any possible finding of defense of Galichia. Therefore, if the jury considered the self-defense question, it was harmless error, if any, to not instruct on the defense of third person issue. Under different circumstances the omission of this instruction could have been harmful error; however, we restrict our holding of harmless error to the facts in this case. We overrule Curtis's first point of error.

In his second point of error, Curtis claims the trial court erred in admitting the testimony of the police regarding his "in-custody" statements when Curtis had not voluntarily or knowingly waived his *Miranda*[1] or other rights. Curtis further contends that his rights under the fourth, fifth, and fourteenth amendments to the United States Constitution, article one, section nine of the Texas Constitution and article 38.22 of the Texas Code of Criminal Procedure were violated. We disagree.

At the outset we note that Curtis complains about the testimony of five police officers, specifically mentioning Officers Ball and Ortega. However, Curtis fails to direct the trial court's attention to *any* specific statements made by any of the officers.

Officer Garcia testified without objection that he was the first officer to talk with Curtis who appeared intoxicated and was holding himself up by hanging on the car and the officer's shoulder. Curtis told him that "somebody was shooting at him" and he wanted the police to take care of it.

Officer Ball testified that he questioned Curtis at the scene of the shooting attempting to discover why the police were needed and what, if any, additional action was required. Based on what Curtis was saying, Officer Ball decided that a S.W.A.T. team would be required to defuse the situation. Although Curtis appeared intoxicated, he was not under arrest at this time. A short time later Galichia returned to the scene and told Officer Ball that Curtis had a gun and shot the decedent. At this point Officer Ball asked Curtis "was there another gun involved?" Curtis replied, "I may have had a gun." Officer Ball then asked, "Mr. Curtis, did you fire any shots?" Curtis said, "I may have fired a shot or two as

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

I ran out the door." Officer Ball instructed Officer Henry to arrest, handcuff and "Mirandize" Curtis.

Officer Henry testified he arrived in the scene at 11:25 p.m., placed Curtis under arrest, handcuffed him, and read him the *Miranda* warning. Curtis kept interrupting the officer, stating "he knew his rights and that he didn't need them read to him." Finally after being interrupted three times by Curtis, the officer fully read Curtis his rights. Curtis replied he understood each and every right read to him. Curtis's demeanor was one of anger. Curtis was placed in the back of the squad car and driven downtown to the police station. While Curtis was never asked any questions during the ride he did make several unsolicited, threatening statements to Officer Henry. Curtis stated that Henry and his partner would be back on a paper route because they had arrested the wrong person and that he knew somebody very high in the Supreme Court, specifically Chief Justice Rehnquist.

Officer Ortega testified, without objection, that he first talked to Curtis at the police station. Ortega explained the booking process to Curtis and then Mirandized him. Curtis responded, "I know my rights better than you do." Curtis then voluntarily told three different versions about what occurred. First he stated that the decedent had committed suicide. Next, he stated that the decedent exhibited a gun and had pointed it at Curtis' head, at which time he shot the decedent once. Finally he stated the decedent had displayed a gun and he (Curtis) shot him twice. Curtis refused to reduce his story to writing. Curtis was then released on bond.

 The Texas Court of Criminal Appeals has delineated a set of factors which are to be examined in light of the specific facts of each case to ascertain whether a person is "in custody," so as to invoke the protections of *Miranda* and thus Article 38.22. Those factors are: 1) whether probable cause to arrest existed, 2) whether the defendant was the focus of the investigation, 3) the subjective intent of the police, and 4) the subjective belief of the defendant. *Shiflet v. State,* 732 S.W.2d 622, 629 (Tex.Crim.App.1985). An examination of these factors, with reference to the facts of this case, demonstrates that initially Curtis was not "in custody" at the time he gave the statements to the officers. All the conversations that took place prior to Officer Ball having Officer Henry arrest Curtis were merely to gain basic information to aid the officers in deciding what procedures were required to defuse the situation. It is clear that once Curtis responded that he may have fired a shot the investigation then "focused" on Curtis and he was immediately arrested and properly Mirandized. Any statements after that time were given freely and voluntarily, without objection, and were admissible under article 38.22(5) of the Texas Code of Criminal Procedure. We overrule Curtis's second point of error.

In his third point of error, Curtis claims he did not have effective counsel in the trial court in violation of his rights under the United States Constitution. He argues that, as a result, the totality of the representation was ineffective and Curtis was thereby prejudiced. We disagree.

To advance his claim of ineffective assistance of counsel, Curtis must meet a two-pronged test: First, he must show that counsel's performance was deficient, i.e., that his assistance was not reasonably effective. Second, assuming the first is shown, the defendant must affirmatively show prejudice, i.e., a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ingham v. State,* 679 S.W.2d 503, 508–09 (Tex.Crim.App.1984), *citing Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed. 2d 674 (1984). The adequacy of counsel's service on behalf of an accused must be gauged by the totality of the representation. *Ex parte Raborn,* 658 S.W.2d 602, 605 (Tex.Crim.App.1983). Thus, the constitutional right to effective counsel does not mean errorless counsel. *Ex parte Robinson,* 639 S.W.2d 953, 954 (Tex.Crim.App. 1982). In assessing counsel's performance, every effort must be made to eliminate the

**464**

distorting effects of hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex.Crim.App. 1983). The appellant must overcome the presumption that under the circumstances the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 688–89, 104 S.Ct. at 2065; *Stenson v. State*, 695 S.W.2d 569, 571 (Tex.App.— Dallas 1984, no pet.).

The burden of proving ineffective counsel falls on the appellant and must be proven by a preponderance of the evidence. *Moore v. State*, 694 S.W.2d 528, 531 (Tex. Crim.App.1985). In determining whether there was ineffective assistance of counsel, the trial as a whole must be looked at, not isolated instances of counsel's performance. *Ewing v. State*, 549 S.W.2d 392, 395 (Tex.Crim.App.1977).

Curtis cites the following instances in the record to support his claim: Counsel failed to file a Motion in Limine; failed to have a hearing on a motion to suppress the "in-custody" statements of Curtis; failed to object to the same at the trial; waived the attorney-client privilege; allowed statements made under Sodium Amytal to be admitted against Curtis at the trial; failed to cross-examine a key witness for the State as to the motive of the witness to testify against Curtis and be untruthful; and counsel's conduct caused him to be held in contempt of court which prejudiced Curtis. He also maintains that the asking of a question of a hostile State witness that invited a flood of unfounded conclusions of the said witness, all of which were damaging and prejudicial to Curtis, are a further indication that the totality of the representation was ineffective.

We hold that defense counsel in this case was very effective. Counsel undermined the credibility of Galichia, the State's eyewitness; counsel tried to establish Curtis's reputation as a peaceful, law-abiding and responsible person; and he emphasized the decedent's reputation as a paranoid, psychotic schizophrenic. The jury chose to believe the State's version of the case and the physical evidence which demonstrated that the deceased had not drawn his weapon. The light sentence assessed for the murder, ten years probation and a $10,000 fine, properly reflects the circumstances of the case and Curtis's two very capable defense attorneys. Because Curtis fails to meet the initial prong of *Strickland*, we need not address the second. Hence, we overrule Curtis's final point of error and affirm the judgment.