

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00817-CR

Jayson Robert **SPONABLE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Guadalupe County, Texas
Trial Court No. CCL-16-1291
Honorable Frank Follis, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: December 27, 2018

AFFIRMED

A jury found appellant Jayson Robert Sponable guilty of the offense of assault–family violence, a misdemeanor. On appeal, Sponable contends the trial court erred in refusing to provide the jury with instructions relating to: (1) defense of a third person; and (2) the presumption of reasonableness that the force used was immediately necessary. We affirm the trial court's judgment.

**BACKGROUND**

The record shows Sponable and the victim have been in a relationship for approximately four years. They have two children. The victim testified that on a Sunday, she and the couple's infant daughter went to Sponable's place of employment — a small engine repair shop — "to basically try to get him to come home." The shop was closed at the time she went to see Sponable. The victim stated she went inside to speak to Sponable, leaving her infant daughter asleep in the car in her car seat with the air conditioner running. She said that for the first hour she was in the shop, she could see her daughter in the car from the shop; Sponable denied this, testifying the victim could not see outside the shop because the windows were closed and "[t]hey're like pieces of wood that slide in a — in like a slat[.]" The victim stated she only lost sight of her child for thirty minutes when she and Sponable went into the shop's office; Sponable could not see the child either. The victim vehemently denied her daughter was unsafe while in the car — she was just feet away at all times.

The victim testified she attempted to convince Sponable to come home, but he refused. Sponable denied the two were even living together at that time. According to the victim, Sponable claimed he was waiting for a customer, but she did not believe him. During his testimony, Sponable reasserted his contention that he was waiting for a customer and was not doing drugs. The victim contradicted this assertion, stating her belief that Sponable was under the influence of drugs at that time — she had seen him do drugs before and testified to her familiarity with his behavior when he is under the influence. Seguin Police Department Officer Dustin Kincaid testified the victim advised him that Sponable had been using drugs the day before the incident at the shop, but there was nothing in the police report about Sponable being under the influence of drugs at the time of the incident. Officer Kincaid stated his belief that if the victim had told him

Sponable was under the influence of drugs at the time of the assault, he would have recorded the information in his report.

According to Sponable, the victim came into the shop "cussing [him] out[,]" calling him names, and accusing him of doing drugs at the shop. He claimed she was trying to provoke him. The couple then began arguing — not for the first time — about drugs, specifically Sponable's addiction to methamphetamines. The victim claimed Sponable stayed at the shop after it closed to do drugs because he knew she would not allow him to do them at home. During his testimony, Sponable admitted that at the time he "was freaking screwed up with drugs[,]" which made his relationship with the victim "rocky[.]" However, as noted above, he denied he was under the influence that day.

As the victim and Sponable continued to talk, things escalated. The victim admitted on cross-examination that during her confrontation with Sponable, she knocked over a bucket containing nuts and bolts because she was upset. The two began yelling at each other. During his testimony, Sponable claimed he grabbed his laptop computer and went into the office, followed by the victim. Sponable stated the victim wanted his laptop, believing it had evidence that he was cheating on her. Sponable testified he was trying to "get her out of the office," screaming at her "and just really trying to intimidate her so she would leave because she wouldn't listen." He stated "the last time I tried to intimidate her, I kind of like bumped up to her and she elbowed me right in the throat, well kind of the throat. It's like right up under the throat meets the chest right here." Sponable stated he told the victim at that point he was going to "call the cops." Sponable stated he was trying not to touch the victim, but to get her to move out of the doorway. Sponable also stated he did not call the police because he could not find his cell phone and assumed the victim had picked it up. The victim denied taking the phone.

The victim agreed Sponable was behind her, yelling in her ear, but she denied elbowing him in the throat area. Rather, she stated she used her elbow in his chest to push him away. The victim stated she used her elbow against Sponable's chest just to get away from him. Then, according to the victim, they "started pretty much pushing each other." According to the victim, Sponable was "mad" and "pretty upset." She testified she was scared based on Sponable's "escalating" voice and the "look on his face." When she pushed him, he pushed back with "his arms on [her] shoulders." The victim claimed it became a shoving match. According to Sponable, during this time he was actually looking for his cell phone for "probably like 20 minutes." As he was searching, he heard his daughter "screaming in the backseat of the car, screaming daddy, daddy, daddy." He testified the child's face was red and she was crying. He denied knowing she had been in the car during his confrontation with the victim. Sponable stated he then left the shop and removed the child from the car.

He claimed that when he returned to the front of the shop with his daughter in his arms, the victim was "pulling wires" out of his boss's truck, which he used, along with cell phones and other personal items that belonged to him. When he asked her what she was doing, she pushed him "with my daughter in my hands, " called me "a sorry piece of ___." As a result of the push, he stumbled. He then walked into the office, trying to lock the door so he could use his laptop to contact police. He stated he was trying to get away from the victim, but once he was in the office, the victim began trying to open the door with a crowbar. When that did not work, she began trying to kick in the door. According to Sponable, she was also throwing his tools around in the shop and knocked a toolbox over. At some point, the door jamb gave way and the door struck him in the head and face. He said he suffered a "busted" lip and was bleeding, but "[i]t wasn't that big of a deal." He said at that point he placed the baby on the floor in order to grab the door "and push

the door back on its hinge." Sponable testified that the child "didn't get hit … but she could of got hurt real bad if I wouldn't have set her down."

At that point, according to Sponable, he "grabbed a little piece of wood that was falling" and "hit her with it." He described the piece of wood as trim, about 1.5" wide and 1/8" thick. He testified he struck the victim with the wood "[b]ecause she was coming through the door to try to attack me" and he used "immediate force to protect" himself and his daughter. He described his actions as reasonable, stating "it could have been way worse. I'm a pretty big dude; she's not that big." Sponable stated he tried to stop the victim from hitting him, advising there was nothing else he could have done. He said he had nowhere to which he could retreat once he was in the office, describing it as "a little cage." Sponable admitted he also punched the victim, but claimed it was because she "kept coming at me." He stated the trim broke over her head because it was so flimsy and "it didn't even phase her." According to Sponable, that was when he punched her, grabbed the baby from the floor and left. He said he left with his daughter because it was his "weekend" pursuant to their agreement. And, Sponable stated he believed the child was safer with him at that point.

The victim, on the other hand, testified that after their shoving match Sponable ran outside of the shop and grabbed their daughter out of the car, walked back inside, and locked himself in the shop's office. She denied pushing him when he removed the child from the car, but admitted she told authorities that she tried to grab her daughter from Sponable. The victim testified Sponable stated he was not going to give the child back to her. Although the victim admitted Sponable was entitled to possession of the child at that time due to an agreement between the parties, she was worried about the child's safety given "the state [Sponable] was in at that point." When asked to clarify regarding Sponable's "state," the victim said he was "on drugs" and "irate." The victim testified that when Sponable is sober, he is not violent, but is respectful, well-mannered,

and "very good to the kids." However, when he is under the influence of drugs, "his attitude does a whole 360." She stated he is rude and agitated. The victim stated that when he is in such a state, she is concerned with his ability to properly parent, explaining her desire to retrieve the child.

The victim admitted trying to open the door with a screwdriver, but could not. She then started kicking the door, eventually kicking it in. At that point, according to the victim, Sponable "grabbed a piece of wood" and "swung it" at the victim "with full force." The victim, who is 5' 6" tall, stated Sponable, who is 6' 2" tall, hit her "twice in the forehead" with the piece of wood, which she described as "three or four feet long and … probably about two or three inches wide, like thick wise." He then hit her on the side of the head with his fist, causing her to fall to the floor. Sponable admitted striking the victim on the side of her head.

The State introduced and trial court admitted into evidence pictures of the victim taken the day of the incident that showed a large knot on her forehead and a cut on her arm. Sponable denied the wood he struck her with could have created the knot, testifying the wood actually "broke in the air while I was swinging it." Sponable stated his belief, with regard to the knot on the victim's forehead, that "she did that to herself, yeah." The victim testified that as Sponable struck her with the wood and his fist, he was yelling at her "is this what you wanted?" Sponable then grabbed the child and left. The victim denied the child was involved in any portion of the physical altercation. She also denied doing "anything destructive" to Sponable's vehicle. She further denied taking his cell phone or laptop computer, stating she merely picked up the laptop and placed it on top of a mower. She admitted she did this to make Sponable believe she had taken the laptop.

After Sponable left with the child, the victim called Sponable's mother and then went to the police station to file a report. She later retrieved her daughter from Sponable's mother. Although the couple ceased living together after the incident at the shop, the victim stated the two continued to talk through Facebook messenger and by text and phone. With regard to their

conversations, the State introduced, and the trial court admitted into evidence, photographs of certain Facebook messenger conversations between the victim and Sponable that occurred right before the trial. In those conversations, Sponable accuses the victim of initially lying to law enforcement, which she denies. Sponable admits striking the victim, but claims she was "standing." The victim replies that he struck her when she "was down." Sponable states in the messages, "I punched u and you fell." The victim responds, stating Sponable hit her twice "with the wood" and while she was falling he punched her. Sponable claims in the message he hit her "once with the trim" and then "pinched" her, which the victim testified was a typographical error and Sponable admitted he "punched" her. She denied in the Facebook messages that he hit her with "trim," as Sponable suggests. She then advised Sponable multiple times to watch the shop's video of the incident, suggesting it would support her version of events. The video could not be recovered, though law enforcement tried.

Leopoldo Leija testified for Sponable. Leija employed Sponable and owned the shop where the incident between Sponable and the victim took place. Leija testified the shop had a video camera and it recorded the incident. He stated he viewed the video with Sponable. However, according to an investigator, the night before Leija testified he told the investigator he had never watched the video.

Leija, who testified he had seen the video, stated he saw Sponable and the victim arguing; they were screaming and yelling at each other. Leija said he could see the victim "like swinging" at Sponable, "hitting him a few times." However, on cross-examination he clarified that he could "only see her swinging." Leija testified he saw Sponable walk toward the office. Although he could no longer see anyone, he stated he could hear "a bunch of noise," "like someone hit the door and then … a bunch of screaming." He concluded by saying that after the screaming "then like [Sponable] goes into the office. And that's pretty much it, you know." Leija admitted the camera

did not cover the office area. Leija said that when he returned to his shop he could see the door "kind of hanging."

With regard to the actual surveillance video, Leija testified it was destroyed when he moved out of the building. He explained that it was damaged during the move. He moved out of the building approximately two months after the incident between the victim and Sponable.

After hearing arguments of counsel and the jury charge, the jury retired to deliberate. It rejected Sponable's claim of self-defense and found him guilty of assault–family violence. The trial court sentenced Sponable to two hundred days in jail and assessed a $1,000.00 fine.

## ANALYSIS

As set out in the introduction, Sponable raises two appellate issues, both relating to the jury charge. First, he contends the trial court erred in refusing to include a jury instruction on defense of a third person. Second, he contends the trial court erred in refusing to include a jury instruction on the presumption of reasonableness that the force used was immediately necessary. He further contends the trial court's failure to include one or both of these instructions harmed him, entitling him to a reversal.

### *Standard of Review*

In reviewing claims of charge error, we first ask whether there was error in the charge. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009). If we conclude there was error, there are separate standards of review for determining whether the defendant was harmed. *Rogers v. State*, 550 S.W.3d 190, 191 (Tex. Crim. App. 2018); *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). If the defendant proffered a timely objection, reversal is required if the defendant suffered "some harm." *Rogers*, 550 S.W.3d at 191; *Marshall*, 479 S.W.3d at 843. Under the "some harm" standard, reversal is required if the error

was "calculated to injure the rights" of the defendant, i.e., there must be some harm to the defendant from the error. *Rogers*, 550 S.W.3d at 191; *Sakil*, 287 S.W.3d at 26 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). However, if the defendant failed to timely object to the complained-of instruction, reversal is required only if the error was so egregious and created such harm that the defendant was denied a fair and impartial trial. *Marshall*, 479 S.W.3d at 843; *Villarreal v. State*, 453 S.W.3d 429, 435 (Tex. Crim. App. 2015). Error is egregiously harmful only if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 435. This is a difficult standard to meet. *Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 435.

In conducting either a review for "some harm" or egregious harm, neither the appellant nor the State bears the burden on appeal to show harm or lack thereof. *Rogers*, 550 S.W.3d at 191; *Marshall*, 479 S.W.3d at 843. Rather, the appellate court must examine the relevant portions of the entire record — the entire jury charge, the state of the evidence, arguments of counsel, and other relevant record information — to determine whether the appellant suffered actual, as opposed to theoretical, harm as a result of the error. *Rogers*, 550 S.W.3d at 192; *Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 435.

A trial court must provide the jury with a written charge "distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in [the] charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14. This mandate requires a trial court to instruct the jury, when properly requested, on statutory defenses, affirmative defenses, and justifications raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). The decision to exclude a defensive issue in the charge is reviewed for an abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App.

2000) (en banc); *Lee v. State*, 442 S.W.3d 569, 577 (Tex. App.—San Antonio 2014, no pet.); *see Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). When reviewing a trial court's decision to refuse a requested defensive instruction, we view the evidence in the light most favorable to the defendant's requested submission. *Bufkin*, 207 S.W.3d at 782; *Lee*, 442 S.W.3d at 577.

A defensive issue is raised by the evidence if there is some evidence, regardless of its source, on each element of a defense that, if believed by the jury, would support a rational inference that the defense is true. *Krajovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013); (Tex. Crim. App. 2013); *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). In deciding whether a defensive issue has been raised by the evidence, a court must rely on its own judgment, formed in light of its own common sense and experience, as to the limits of rational inference from the facts that have been proven. *Shaw*, 243 S.W.3d at 658. An instruction is required when there is legally sufficient evidence to raise the defense, regardless of whether the evidence supporting the defense is weak or contradicted and even if the trial court is of the opinion that the evidence is not credible. *Elizondo v. State*, 487 S.W.3d 185, 196 (Tex. Crim. App. 2016); *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013); *Shaw*, 243 S.W.3d at 658.

### Defense of a Third Person

In his first issue, Sponable contends he was entitled to an instruction on defense of a third person. More specifically, Sponable contends there was sufficient evidence to show he reasonably believed the force he used against the victim was immediately necessary to protect his daughter.

*Applicable Law*

Section 9.33 of the Texas Penal Code provides that a person is justified in using force against another to protect a third person if: "(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified … in using force … to protect himself against the

unlawful force … he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person." TEX. PENAL CODE ANN. § 9.33. A "reasonable belief" is one that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id.* § 1.07(a)(42). The focus of the defense is upon what the actor reasonably believes concerning the situation of the third person. *Morales v. State*, 357 S.W.3d 1, 8 (Tex. Crim. App. 2011). In other words, a defendant is justified in defending a third person if, under the circumstances as the defendant reasonably believes them to be, the third person would be justified in defending herself. *Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016). Thus, if there is evidence that Sponable reasonably believed that hitting the victim with the piece of wood and punching her was immediately necessary to protect his daughter, then he was entitled to an instruction on defense of a third person. *See id.*

### Application

With regard to defense of a third person, Sponable contends there is evidence he struck the victim with the wood and punched her because he reasonably believed it was immediately necessary to protect his infant daughter. We disagree.

The evidence shows that after Sponable and the victim had been arguing for some time, Sponable went outside and removed the infant from the car. The reason for this was disputed. Sponable claimed he took the infant out of the car because she was in distress; the victim claimed he did it to aggravate her. He stated he returned with the child to the inside of the shop and attempted to lock himself and the child in the shop's office. It is undisputed that it was only when Sponable removed the child from the vehicle and took her into the office that the victim began kicking the door in an attempt to retrieve the child. The victim stated that at the time she hoped the child would not be hurt. Although Sponable argues the child could have been injured by a

wood projectile from the door, there was no evidence to this effect. Moreover, Sponable admitted that "as soon as the door broke through the first time, the door jamb started coming down" he pushed the door back into place and set his daughter down. Sponable specifically testified his daughter was not struck, admitting she would have "got hurt real bad" only if he had not "set her down." The evidence shows it was *after* Sponable set the child down that the victim kicked in the door, striking Sponable in the face, and it was then that Sponable struck the victim twice in the forehead with a piece of wood and punched her. At that point, any force by the victim was directed at Sponable, not the child. At the time Sponable struck the victim, there was no evidence the victim posed any threat to the child. Although Sponable testified he struck the victim in defense of himself and his daughter, the evidence does not support a reasonable belief that at the time Sponable struck the victim, such action was immediately necessary to protect the child.

We find this case analogous to *Madrigal v. State*, 347 S.W.3d 809 (Tex. App.—Corpus Christ 2011, pet. ref'd). In *Madrigal*, the defendant testified he stabbed the victim because he feared for his ex-girlfriend — the third person — "[b]ecause she was right there next to me and in front of me. They were coming from the back of her." 347 S.W.3d at 817. The defendant admitted he moved his ex-girlfriend "to the side" before he stabbed the victim. *Id.* The appellate court held this evidence was insufficient to entitle the defendant to an instruction on defense of a third person because there was no evidence the third person — the defendant's ex-girlfriend — was in danger of being attacked by the victim. *Id.* at 818. The defendant's testimony that he feared for her safety was insufficient to raise the defense. *Id.*

As the defendant did in *Madrigal*, Sponable placed the "third person" away from an attack directed at him. *See id.* at 817. When Sponable assaulted the victim, there was no evidence the child — the "third person" — was in any danger at all — especially from the victim. *See id.* at 818. Sponable's testimony that he acted in defense of his daughter is insufficient, under the

circumstances, to support entitlement to an instruction on defense of a third party. Accordingly, we hold the trial court did not err in refusing the requested instruction.

Moreover, we hold that even if the trial court erred in refusing Sponable's request for an instruction on the defense of a third party, such error did not result in "some harm" to Sponable. This case is similar to those in which courts have held it was harmless error for the trial court to fail to instruct the jury on defense of third persons, although raised by the evidence, when it provided the jury with an instruction on self-defense and both were based on the same evidence. *See, e.g., Evans v. State*, 945 S.W.2d 153, 158 (Tex. App.—El Paso, 1997, no pet.); *Hernandez v. State*, 914 S.W.2d 218, 224 (Tex. App.—El Paso 1996, pet. ref'd); *Curtis v. State*, 754 S.W.2d 460, 462 (Tex. App.—Dallas 1988, pet. ref'd); *cf. Rodriguez v. State*, 524 S.W.3d 389, 393–95 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (holding that failure to submit necessity defense did not cause appellant to suffer "some harm" because jury's rejection of self-defense theory meant it would have also rejected necessity defense); *Barrios v. State*, 389 S.W.3d 382, 397–98 (Tex. App.—Texarkana 2012, pet. ref'd) (holding that failure to submit defense of third party instruction did not cause appellant to suffer "some harm" because jury's conclusions on defensive instruction of necessity meant it would have also rejected defense of third party theory). In *Evans*, *Hernandez*, and *Curtis*, the defendants claimed they acted in self-defense and in defense of a third person. *Evans*, 945 S.W.2d at 158; *Hernandez*, 914 S.W.2d at 224; *Curtis*, 754 S.W.2d at 462. In each case, the trial court instructed the jury on self-defense, but the jury rejected the claims of self-defense. *Evans*, 945 S.W.2d at 158; *Hernandez*, 914 S.W.2d at 224; *Curtis*, 754 S.W.2d at 462. On review in each case, the appellate courts determined that any error in refusing to instruct the jury on defense of a third person was harmless because the jury's negative finding on self-defense precluded the possibility that the defendant was justified in using deadly force to defend a third person. *Evans*, 945 S.W.2d at 158; *Hernandez*, 914 S.W.2d at 224; *Curtis*, 754 S.W.2d at 462.

In this case, Sponable's claim that he was entitled to both a self-defense and a defense of third person instruction rested on the same evidence, which is detailed above. The trial court instructed the jury on Sponable's right to use force to protect *himself* from the victim's use of force. However, the jury implicitly rejected Sponable's theory of self-defense by finding him guilty of assault—family violence. Sponable's claim of defense of a third person was based on the very same evidence as his defense of a third person. Thus, the jury's rejection of Sponable's claim that he struck the victim because he feared for himself precludes the possibility that a rational jury would have nevertheless concluded his actions were justified to protect his daughter. *See Evans*, 945 S.W.2d at 158; *Hernandez*, 914 S.W.2d at 224; *Curtis*, 754 S.W.2d at 462; *cf. Rodriguez*, 524 S.W.3d at 393–95; *Barrios*, 389 S.W.3d at 397–98. Having considered the entire jury charge, the state of the evidence, the arguments of both counsel, and, particularly, the jury's consideration and rejection of Sponable's self-defense claim, we conclude the trial court's error, if any, in failing to instruct the jury on defense of a third person was harmless. *See Rogers*, 550 S.W.3d at 191; *Sakil*, 287 S.W.3d at 26

### *Presumption of Reasonableness*

Sponable next contends he was entitled to an instruction on the presumption of the reasonableness of his belief that the force he used was immediately necessary. He argues the trial court erred in refusing to include the instruction in the charge and the omission — given his failure to object — caused him egregious harm. The State contends Sponable was not entitled to the instruction, but even if he was, any error in refusing the instruction did not cause him egregious harm.

### *Applicable Law*

In 2007, the Texas Legislature added provisions to the Texas Penal Code that require a jury to presume non-deadly force was reasonable under certain circumstances. *Morales v. State*, 357

S.W.3d 1, 6 (Tex. Crim. App. 2011). As is relevant here, section 9.31(a) of the Penal Code was amended to provide that a defendant's belief that the force used against another person was immediately necessary is presumed reasonable if the defendant:

(1) knew or had reason to believe that the person against whom the force was used unlawfully and with force, entered, or was attempting to enter unlawfully and with force, the actor's habitation, vehicle, or place of business or employment;

(2) did not provoke the person against whom the force was used; and

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor or traffic violation, at the time the force was used.

TEX. PENAL CODE ANN. § 9.31(a). Thus, this section describes the conditions under which a jury must presume the defendant's belief that use of force was immediately necessary was reasonable. *See id.* An instruction on the presumption of reasonableness must be included in the jury charge if there is sufficient evidence of the facts giving rise to the presumption as set out in section 9.31(a) "unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact." *Id.* § 2.05(b)(1); *Morales*, 357 S.W.3d at 7.

*Application*

We need not decide whether the trial court's failure to instruct on the presumption of reasonableness was error because we conclude Sponable has not suffered egregious harm. *See Villarreal*, 453 S.W.3d at 433 (assuming without deciding that court of appeals properly determined the existence of charge error). As set out above, error is egregiously harmful only if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Marshall*, 479 S.W.3d at 843. Egregious harm is a "high and difficult standard to meet, and such a determination must be borne out by the record." *Villarreal*, 453 S.W.3d at 433. We now examine the jury charge, the state of the evidence, arguments of counsel, and other relevant record information to determine whether Sponable suffered actual, as opposed to

theoretical, harm as a result of the error. *Rogers*, 550 S.W.3d at 192; *Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 433.

### 1. *Entirety of the Jury Charge*

In addition to abstract charge on assault—family violence and the application paragraph relating thereto, the trial court charged the jury on the law of self-defense. The self-defense charge properly informed the jury on the general law of self-defense, including when the use of force is justified under section 9.31(a) of the Texas Penal Code, the meaning of "reasonable belief," that verbal provocation alone is insufficient to justify the use of force, and the matter of retreat. *See* TEX. PENAL CODE ANN. § 9.31(a). With regard to retreat, the trial court instructed that retreat is not necessary when the person has a right to be at the location where the force is used, has not provoked the person against whom force is used, and who is not engaged in criminal activity at the time the force is used. As Sponable complains, the charge did not include an instruction on the presumption of reasonableness regarding his purported believe that the use of force was immediately necessary. *Id.* § 9.31(a)(1)–(3).

Based on the charge in its entirety, we hold this factor does not weigh in favor of egregious harm. *See Villarreal*, 453 S.W.3d at 433. If the jury had been instructed on the presumption of reasonableness, the jury would have been informed that under some circumstances, Sponable would not be entitled to the benefit of the presumption. *See* TEX. PENAL CODE ANN. § 9.31(a). Specifically, had it been given, the jury would have been permitted to disregard the presumption if it concluded Sponable provoked the victim or was engaged in criminal activity — other than a Class C misdemeanor or traffic violation — at the time he struck the victim. *Id.*; TEXAS CRIMINAL PATTERN JURY CHARGES, *Defenses* 246-47 (2013). Because the omitted instruction would have permitted the jury to decide it did not apply under the facts of the case, this factor does not weigh in favor of a conclusion that Sponable suffered some actual as opposed to theoretical harm from

the omission. *See Villarreal*, 453 S.W.3d at 433. Moreover, the applicability of the omitted instruction was dependent upon the evidence adduced at trial, to which we now turn and, as explained below, we conclude the omitted instruction did not deprive Sponable of a fair and impartial trial. *See Villarreal*, 453 S.W.3d at 433.

### 2. *State of the Evidence*

As for the state of the evidence, we begin by noting that "the mere existence of conflicting testimony surrounding a contested issue does not necessarily trigger a finding of egregious harm." *Id.* Moreover, we must consider "the plausibility of the evidence raising the defense." *Id.*

With regard to the evidence, it shows Sponable and the victim were initially engaged in a verbal confrontation that led to some pushing and shoving. The argument centered around Sponable's alleged drug use. However, it was only when Sponable removed the couple's child from the victim's vehicle and attempted to lock himself and the child in the shop's office that things escalated. At that point, it is undisputed the victim began to make all efforts to retrieve the child from Sponable, including kicking the door to the office. Although the victim admitted that pursuant to their agreement, Sponable was entitled to possession of the child on the day in question, she testified he was under the influence of drugs at the time — his drug of choice being methamphetamines. She also stated that by the time he removed the child from the vehicle, he was "irate" and when he took the child he was "still verbalizing his anger." The victim testified she had been around Sponable when he was using and recognized the signs — describing Sponable as sort of a Jekyll and Hyde with regard to his personality off and on drugs. Sponable denied using drugs that day, but admitted that at the time he "was freaking screwed up with drugs."

The victim testified to her belief that Sponable took their infant daughter from the vehicle not in an effort to console her — the victim denied the baby was crying or in any distress — but to "aggravate" her. She stated Sponable was aware that when he would take the child and the

victim would ask him to return her, an argument would ensue if Sponable refused. Such an argument would begin with yelling and screaming, but would then escalate. As the victim stated, "and then it — it gets more than that," which suggests devolvement into a physical altercation. On the day of the assault, the victim testified she was telling Sponable over and over to return the baby to her, but "he kept saying, I'm not giving her back to you." The victim was frantic about the baby because Sponable "was obviously doing drugs the night before and he was still high that day."

Sponable's evidence of self-defense, which is set out in detail in the background portion above, was weak in comparison to evidence from the victim that he provoked her by taking the child — knowing such actions would escalate into a physical confrontation, refused to return the child, and struck her twice in the forehead with a piece of wood and then punched her. The photographs of the victim's injuries belie Sponable's claim that he struck her with a flexible piece of door trim. Given the evidence, and the jury's rejection of Sponable's claim of self-defense, a rational jury could have found beyond a reasonable doubt that Sponable provoked the victim by taking the child and locking himself and the child in the office. The jury could have also rationally concluded, given the victim's testimony that Sponable was under the influence of drugs and how he behaved when under the influence, that Sponable was endangering the infant, which is an offense under the Penal Code.[1] *See* TEX. PENAL CODE ANN. § 22.041(c). Because a rational jury could have determined Sponable provoked the victim and was committing the offense of child endangerment at the time he assaulted the victim, it most certainly could have concluded Sponable

---

[1] A person commits the offense of child endangerment if he intentionally, knowingly, recklessly, or with criminal negligence, by act of omission, engages in conduct that place a child under the age of fifteen in imminent danger of death, bodily injury, or physical or mental impairment. TEX. PENAL CODE ANN. § 22.041(c). For purposes of subsection (c), it is presumed that a person engaged in such conduct if the person injected, ingested, inhaled, or otherwise introduced a controlled substance listed in Penalty Group 1 in section 481.102 of the Texas Health and Safety Code into the human body when the person was not in lawful possession of such substance. *Id.* 22.041(c-1)(3). There was evidence Sponable had ingested methamphetamines, which is listed in Penalty Group 1. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(6).

was not entitled to a presumption of reasonableness with regard to his use of force. *See* TEX. PENAL CODE ANN. § 9.31(a). Accordingly, we hold the state of the evidence does not weigh in favor of a finding of egregious harm because two of the three elements necessary for the omitted instruction are not supported by the evidence. *See Villarreal*, 453 S.W.3d at 439–40.

3. *Arguments of Counsel*

The arguments by the State and Sponable's counsel show both were focused primarily on whether Sponable acted in self-defense, specifically the concept of retreat and whether Sponable had a "reasonable belief" that the amount of force used was necessary under the circumstances. The State devoted the majority of its argument to challenging the reasonableness of Sponable's belief that the forced used, specifically the amount of force, was necessary. The State emphasized the lack of reasonableness of Sponable's actions based on the discrepancies between the size of the victim and that of Sponable and the actual force used by Sponable — two strikes in the forehead with a board and a punch to the side of the head. In fact, the prosecutor began the closing argument by stating the case boiled down to whether Sponable was "justified in striking" the victim "three times." Thus, it appears the prosecutor was attempting to convince the jury Sponable's belief that the force he used against his much smaller victim was not a belief that would have been held by an ordinary and prudent person under the same circumstance — the very definition submitted to the jury for the phrase "reasonable belief." Although the record shows the prosecutor referenced provocation and the possibility of criminal conduct by Sponable, which are components of a presumption of reasonableness instruction, provocation and absence of criminal activity are also components of the concept of "retreat," which was part of the self-defense instruction given to the jury.

In Sponable's closing argument, his counsel also focused on self-defense, specifically pointing out to the jury that the prosecutor "emphasized … the duty not to retreat." This suggests

that even Sponable's counsel recognized the State's argument was based on the legal concept of retreat, not the presumption of reasonableness. Counsel responded to the State's claim that the force used was not reasonable, arguing Sponable's use of force "was reasonable and proportional." Counsel also argued about the State's burden of proof with regard to self-defense and the meaning of "beyond a reasonable doubt," contending the State had not met its burden to negate Sponable's claim of self-defense. He also pointed to evidence of Sponable's alleged retreat, contending the victim was the aggressor. Counsel emphasized the victim's lack of credibility, suggesting Sponable was on trial — and not the victim — only because the victim contacted police first. Sponable's counsel pointed out Sponable had a right not to testify, but he chose to tell his story because he was innocent, acting only in defense of himself and his child.

Based on the arguments, we conclude the focus of the closing arguments by the State and Sponable was the applicability of self-defense, particularly as it related to the concept of retreat and the reasonableness of the amount of force used by Sponable under the circumstances. Because the omitted presumption-of-reasonableness instruction pertains only to the question of the reasonableness of an actor's belief that the use of force was immediately necessary, and because the reasonableness of Sponable's belief in this regard was not the center of either parties' argument, we conclude this factor weighs against a finding of egregious harm. *See Villarreal*, 453 S.W.3d at 441–42. The crux of the arguments presented centered on the reasonableness of the amount of force used under the circumstances, not the belief that it was immediately necessary. *See id.*

### 4. *Other Relevant Information*

The last factor requires that we consider any other relevant information revealed by the record as a whole in determining whether Sponable suffered egregious harm based on the omission of the presumption-of-reasonableness instruction. *See id.* at 433. Our consideration of the record

with regard to the other three factors includes all relevant information from the record as it relates to the egregious-harm inquiry.

###### 5. *Conclusion — Egregious Harm*

Mindful that error is egregiously harmful only if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory, and that it is a high and difficult standard, we hold the record does not bear out a finding of actual, as opposed to theoretical, egregious harm. *See Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 433. We therefore overrule Sponable's contention that he suffered egregious harm based on the trial court's error, if any, in refusing to instruction the jury on the presumption of reasonableness.

## CONCLUSION

We have analyzed the record in accordance with the applicable law under the proper standards of review. Based on our analysis, we hold: (1) the trial court did not err in refusing Sponable's request for an instruction on defense of a third person, and that even if such refusal was error, Sponable did not suffer "some harm"; and (2) that even assuming the trial court erred in refusing to instruct the jury on the presumption of reasonableness that the force used was immediately necessary, the record does not bear out Sponable's claim that he suffered egregious harm based on the absence of the instruction. Accordingly, we overrule Sponable's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish