

# NUMBER 13-20-00095-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ANTHONY LAZO,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

## On appeal from the County Court at Law No. 3
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Anthony Lazo appeals his conviction of assault family violence, a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 22.01. Lazo was sentenced to three days in the Nueces County Jail. By a single issue, Lazo argues the trial court erred in denying his requested instruction on defense of a third person. *See id.* § 9.33. We affirm.

# I.   BACKGROUND

Courtney Wenger, a patrol officer with the Corpus Christi Police Department (CCPD), testified that she was dispatched to a residence for an "assault call, not in progress" at approximately 2 p.m. on May 26, 2016. Wenger spoke with the complainant, Gina Contreras, and took photographs of her injury.[1] Wenger's recorded interview of Contreras was admitted into evidence at trial.[2]

At trial, Contreras testified that she and Lazo are still married but no longer live together. In May 2016, she and Lazo were living together in a mobile home with their three children. She was unemployed, and Lazo worked painting cars at his family's business. On the day in question, Lazo arrived home around 7 p.m. and told her he was going out. As he was getting dressed, Contreras said she told him, "Okay, go see your sancha."[3] Contreras testified that her statement angered him, and following a brief argument, she told Lazo: "[I]f you want to leave then leave."

Contreras said she followed Lazo to the bathroom because he was carrying their ten-month-old daughter. "I reached to grab her, but I was like this[,[4]] trying to grab had [sic] away from him[;] that's when he bit me right here. . . . I told him to stop because it hurt. He just bites harder. I'm trying to pull away at the same time." Contreras said she started hitting him because he would not release her arm. "At that point, I have [our daughter]. . . . I told him to go—get out and leave." Contreras said she called her mother

---

[1] Photographs at trial depict two semi-circular bruising patches on Contreras's upper right arm.

[2] In the recording, Contreras explains the assault occurred the night before, on May 25, 2016. Contreras claimed Lazo bit her on her right arm after she accused him of cheating. Contreras also stated that Lazo threw a key chain at her and "punched the front door" as he was leaving the residence.

[3] Contreras stated the English translation for "sancha" is "secret lover."

[4] The transcript does not contain a description of Contreras's nonverbal testimony.

after Lazo left and took her children to her parents' house to spend the night there. Contreras called the police the following day at her parents' insistence. On cross-examination, Contreras denied that she had tried to "pull" their daughter from Lazo's arms. Contreras maintained she "[c]arefully grab[bed]" the child. Lazo did not testify.

During the jury charge conference, the State objected to Lazo's proposed inclusion of a self-defense and defense of a third-party instruction. The trial court sustained the State's objection, and the jury charge was submitted without the proposed language. Lazo was ultimately convicted, and the trial court assessed punishment. This appeal followed.

## II. JURY CHARGE ERROR

By a single issue, Lazo argues the trial court erred in denying his request for an instruction on defense of a third person.

### A. Standard of Review and Applicable Law

When presented with an argument that a trial court committed jury charge error, the reviewing court must conduct a two-step inquiry: (1) did an error occur; and (2) if so, did it cause harm that rises to the level of reversible error? *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id.* (citing *Middleton*, 125 S.W.3d at 453). If a defendant preserves error, then he only has to show "some harm" to his rights. *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If he fails to object, he must demonstrate "egregious harm." *Id.* (citing *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004)).

3

Defense of a third person is a defense to prosecution. *See* TEX. PENAL CODE ANN. §§ 2.03, 9.02, 9.33; *Smith v. State*, 355 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The defendant is entitled to an instruction on a defense when there is legally sufficient evidence to raise the defense. *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007); *Vidal v. State*, 418 S.W.3d 907, 910 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Whether the record contains such evidence is a question of law, and we review the record in the light most favorable to the defendant. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006); *Holland v. State*, 481 S.W.3d 706, 708–09 (Tex. App.—Eastland 2015, pet. ref'd). "'An accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense.'" *Madrigal v. State*, 347 S.W.3d 809, 817 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd) (quoting *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996)); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (requiring that a trial court "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case [and] not expressing any opinion as to the weight of the evidence").

Under the defense of a third person provision of the Texas Penal Code, a person is justified in using force or deadly force against another to protect a third person if:

(1)     under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

(2)     the actor reasonably believes that his intervention is immediately necessary to protect the third person.

4

TEX. PENAL CODE ANN. § 9.33. In effect, a person defending on the grounds of defense of a third person stands in the "shoes of the third person." *Jimenez v. State*, 298 S.W.3d 203, 208 (Tex. App.—San Antonio 2009, pet. ref'd); *see Morales v. State*, 357 S.W.3d 1, 4 (Tex. Crim. App. 2011).

## B.      Analysis

Lazo asserts that he was entitled to his requested defense instruction[5] because the evidence showed that he acted in defense of his daughter while in reasonable fear of apparent danger from Contreras. *See* TEX. PENAL CODE ANN. § 9.33. In support of his contentions, Lazo claims the evidence shows that Contreras "tried to wrestle the baby from his arms," which necessitated that he bite Contreras to protect the child. Lazo argues Contreras's testimony establishes this. Based on our review of the evidence presented at trial, we cannot agree.

Contreras was clear; she testified that she and Lazo had been arguing, maintained that she attempted to "[c]arefully grab" the child, and stated that she only struck Lazo after he had bitten her in an effort to get him to release her arm. The only information to the contrary at trial came from Lazo's counsel during questioning[6] and closing arguments—

---

[5] Lazo does not challenge the trial court's denial of his request for an instruction on self-defense. *See* TEX. PENAL CODE ANN. § 9.31.

[6] The following colloquy, in pertinent part, transpired between defense counsel and Contreras:

Q.      Did you think that perhaps if you told the officer that you were the one who went up to [Lazo], and you were the one who tried to pull the baby out of his arm, and you were the one who hit him afterwards, that that officer might actually think that you were the person who committed a family violence assault?

A.      No.

. . . .

5

neither of which constitutes evidence. *See State v. Guerrero*, 400 S.W.3d 576, 584 (Tex. Crim. App. 2013); *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011). Thus, there was no evidence presented which could support a reasonable belief that Lazo needed to use force for the child's immediate protection from imminent unlawful harm. *See Henley v. State*, 493 S.W.3d 77, 94 (Tex. Crim. App. 2016) (concluding requested instruction on defense of third person was properly denied because proffered testimony had no tendency to show third-party children were in need of immediate protection from unlawful force); *see also Sponable v. State*, No. 04-17-00817-CR, 2018 WL 6793527, at *6 (Tex. App.—San Antonio Dec. 27, 2018, no pet.) (mem. op., not designated for publication) (concluding that although the appellant testified he struck the complainant in defense of himself and his daughter, the evidence—which included the complainant "kicking the door in an attempt to retrieve the child"—"does not support a reasonable belief that at the time Sponable struck the victim, such action was immediately necessary to protect the child"); *Green v. State*, No. 01-07-00207-CR, 2009 WL 469553, at *2 (Tex.

---

Q. You didn't tell them the parts that would make you look potentially bad, did you? You didn't tell your parents the part—and your mom's here, she's in the courtroom today. You didn't tell them the part about you pulling the baby or trying to pull the baby out of his arms or you hitting him, did you?

A. No, because I keep to myself. I don't tell anyone anything. And whenever the cops came and my dad was there, I was scared to tell them the truth, because I didn't want my parents thinking less of me.

. . . .

Q. And so when you started pulling your youngest child out of his arms he does whatever he can do to prevent you from doing that and he reaches down and bites your arm. Did it make you stop? Did you stop pulling [the child] out of his arms once he bit you?

A. Honestly, I don't remember that.

Q. Did you pull [the child] out of his arms?

A. No.

App.—Houston [1st Dist.] Feb. 26, 2009, pet. ref'd) (mem. op., not designated for publication) (concluding trial court did not err by denying requested instruction on defense of third person where evidence showed the complainant was not threatening the third person, but was instead, grappling with appellant).

Because Lazo's requested defense lacked any evidentiary support, the trial court did not err in refusing the requested instruction. *See Ngo*, 175 S.W.3d at 743; *Madrigal*, 347 S.W.3d at 818. We overrule his sole issue.

### III.   CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
1st day of April, 2021.

7